The Chief Justice
delivered the opinion of the court.
The plaintiffs in error instituted an action against the defendant in error in the Court of Common Pleas of the county of Hunterdon, upon a promissory note drawn by John L. Coryell, bearing date on tbe 29th day of April, 1814, whereby he promised to pay “ unto John Lambert the sum of five hundred dollars on demand without interest.”
The declaration contains counts upon promises by the drawer of the note, John L. Coryell, in his life time, and by *284 the defendant, as his administrator, since his decease. The pleas are non assumpsit by John L. Ooryell; non assumpsit by the defendant as administrator; and non assumpsit infra sex annos, by John L. Ooryell in his life time.
Upon the trial the plaintiffs were non-suited, because in the opinion of the court, they had not given sufficient evidence in support of the issues on their part; and a bill of exceptions containing the evidence was sealed by the court and now presents the case for our examination and revision..
No demand of the payment of the note appears by the proofs until the 9 th day of August, 1825; after the decease of both the original parties, and upwards of eleven years subsequent to the date of the note.
The precise time of the decease of the drawer does not appear, *but the plaintiffs shewed that letters were granted to Cornelius Ooryell, as his administrator, on the 7th day of August, 1816. And it farther appeared that Cornelius, the first administrator of the drawer, died in 1824, more than six years after the letters , were issued. There is no allegation that the case comes within any of the exceptions in the statute of limitations.
The naked question thus, in the first place, presented to us is, from what time the statute of limitations begins to run in the case of a promissory note payable on demand.— Whether the period of six years within which an action should be brought is to be computed from the making of the note, or from the time when the holder shall make an actual demand of payment ?
The statute, Rev. Laws 410, sec. 1, limits the action to be commenced within six years next after the cause of action shall have accrued and not after.
From this language, it is seen, that- the time of making the contract is not fixed as the time from which the statute shall always begin to operate. The accrual of the cause of action is the prescribed event from which the period of limitation is to be computed. The cause of action, according to *285 circumstances, may or may not accrue at the making of the contract. By the accrual of the cause of action is to be understood the right to institute and maintain a suit.— Whenever the party has a full and complete cause of action, whether it bo at the making of the contract or at some subsequent period, so that he may commence an action, the statute begins to run, as it is somewhat technically expressed. The period allowed by the statute within which a legal demand is to be made is to be reckoned from the time when the plaintiff may, according to the terms and nature of the contract, make such demand by the institution of an action. Thus if a promissory note is made payable on the first day of January next, until after that day no cause of action accrues, the payee cannot maintain a suit, and the statute until then is dormant. If the note is payable when A. shall return from Washington ; or on the marriage of B.; or if C. shall execute a certain release, the cause of action does not accrue, and consequently the statute is inoperative, until A. has returned, or B. is married, or 0. has executed the release. But *after the 1st of January, or the return, or the marriage, or the execution, an action may be forthwith commenced, the limited time is immediately counted, and when six years have elapsed the bar of the statute has acquired its force. Now let us apply this doctrine, not loss consistent with sound reason than with the law as adjudged and settled, to the case of a promissory note payable on demand. As soon as the note is made and delivered, the holder of it may require the payment. An antecedent demand in pais is not a necessary preliminary to the commencement of a suit. Hence as soon as the note is made and delivered, the payee has a full and complete cause of action, and may forthwith enforce his demand at law. He is then, as it respects the commencement of a suit, in the same predicament as the payee in the cases above mentioned, after the 1st day of January, or the return, or the marriage, or the *286 execution of the release. And it follows, that not from the time of the demand, but from the date of the note, as the time of the accrual of the cause of action the statute begins to run and the period of limitation is to be computed; so that after six years from the date of the note, no one of the exceptions provided by the statute existing, the action cannot be maintained.
The principle which I have stated will be.sustained by a review of the adjudged cases, and found to reconcile those supposed by the plaintiffs’ counsel to be contradictory.
The case of Capp v. Lancaster, Cro. Eliz. 548, was upon a bill to be paid on demand. And forasmuch as the plaintiff did not shew an actual demand, the defendant demurred and argued that the demand was a parcel of the contract, so that the money was not due until demanded, and a demand being requisite, a demand in law by bringing the action would not serve, as in 11 Hen. 4 pl. 18, where one is bound to levy a fine upon request. But the court held it to be well enough, for it is a duty maintenant, and therefore there needs not any demand, as in the other cases, for there the plaintiff had not any cause of action until a precedent act done by him ; but it is not so here. And judgment was given for the plaintiff.
In Rumball v. Ball, 10 Mod. 38, upon a note to this effect, “ I acknowledge myself indebted so much, which I promise to pay on demand,” the court held there was a debt plainly precedent *to the demand, and not arising upon the performance of a condition.
The case of Collins v. Benning, is reported in 32 Mod. 444 and 3 Salk. 227. The plaintiff declared in an action of indebitatus assumpsit upon a promise to pay on demand, and the defendant pléaded non assumpsit infra sex annos, and the plaintiff demurred, because declaring on -a promise upon demand, he thought nothing was due until demand, and that the plea should have been non assumpsit infra sex annos after demand, or that there was no demand within *287 six years. But the court said, “ If the promise were for a collateral thing which would create no debt until demand, it might be so; but here it is an indebitatus assumpsit which shews a debt at the time of the promise, therefore the plea is good.” This case is not very clearly reported, yet the doctrine of it cannot be mistaken. The plaintiff insisted there was no debt, or in other words, no cause of action, until demand was made, and that consequently the statute did not operate until after demand. The court said, that was true in some cases, as where the promise -was for a collateral thing, which as it was not to be performed until demanded, no debt or cause of action could arise until the demand was made, but in the case before them where the defendant acknowledged himself indebted, and promised to pay on demand, there was a debt, or in other words a cause of action, at the time of the promise, and from that time therefore the period of the statute must be computed.
In Birks v. Trippet, 1 Saund. 33, the following distinction is recognized. Where a mere duty is promised to bo paid upon request, as if in consideration of all moneys lent to the defendant he promised to pay them again upon request, no actual request is necessary, and the bringing of the action is a sufficient request; but it is otherwise upon a promise to pay a collateral sum upon request, for there an actual request ought to be made before action brought. This case affords an illustration of what is meant by a collateral promise. There was a submission to arbitration and a promise of the defendant that if he did not perform the award on 1ns part, he would pay to the plaintiff the sum of forty pounds, 'when he should be thereunto requested. The court held the promise of payment of the 40l. *upon request, to be collateral, and a penalty, and not a precedent duty, and therefore there ought to have been a request before the action "was brought. In Martin v. Delboe, 1 Mod, 70, on a promise to pay so much out of such a parcel of goods as he wras to receive from beyond sea, *288 it was said the cause of action ariseth from the ship’s coming into port, and the six years are to be reckoned from that time. In an anonymous case, 1 Mod. 89, one of the court is reported to have said, “ If I promise to do a thing upon request, and the promise was made seven years ago, and the request yesterday, I cannot plead the statute.” This saying is an obiter dictum, and the facts of the case do not serve to explain it. The nature of the promise or of the thing to be performed is not stated; and we must therefore conclude 'the judge meant to speak of the collateral promise above mentioned, or of a case where there was no debt or duty until the request was made. The same of. which Oomyns speaks, Com. dig. tit. temps, G-. 6, “ Where the cause of action commences by a request or upon any other condition precedent, the statute cannot be pleaded, if the action be commenced within six years after the request, &c., though it be ten years after the promise or contract.” The same was the case of Shutford v. Penow, Cro. Car. 139, where in consideration that the plaintiff would desist from suing for his sheep killed by the defendant’s dog, and make what benefit he could of the sheep, the defendant promised to recompense him for the'damages sustained. • It was held there was not any cause of breach or ground of action, until request to make recompense, for until such request he did not know what to pay, nor was there any thing due, for the duty ariseth upon the request, and the non-payment after the request is the cause of action ; and if the action be brought within the time of the statute, after the breach, it is well enough. In Harris v. Ferrand, Hard. 36, the contract was of a special character. There was no indebtedness by the defendant to the plaintiff’s testator at the date of the contract. A third person had received from a scrivener a sum of money belonging to the defendant, for the payment of which the testator had subsequently given a conveyance or security, and the defendant promised that if any part of the said money had been previously paid to the scrivener *289 by the said third person, he would pay so *much to the testator when thereto required. Both parties treated the contract as requiring a special request in order to maintain an action. The defendant alleged such request to have been made by the plaintiff’s testator on a named day, at which time he said the cause of action arose upon the promise, and that no action was commenced within six years from that timo. The plaintiff replied that the cause of action accrued at a subsequent time, witniu six years, when he demanded the money, and he traversed the request alleged to have been made by the testator. The defendant rejoined that the testator did request, in his life time, as alleged, and thereupon issue was joined; on which, the jury found that the testator did not request; and assessed the damages according to the claim of the plaintiff. Upon a motion in arrest of judgment, several exceptions were made, but the question now under consideration was not raised nor discussed at the bar, nor decided by the court ; nor does the judgment which was rendered for the plaintiff necessarily involve it; so that this case cannot properly be said to support either side of the present debate.
In Wittershiem v. Carlisle, 1 Hen. Bl. 631, the court held that though on a mere loan of money, the time of limitation might commence from the date of the loan, yet where the money was lent on a special contract for repayment, it was the time of the repayment which ought to fix the period of limitation. In that case a loan was made on the 21st of July, to be repaid on the last day of September, and a bill of exchange for the amount, payable at that day, was given. From the latter, not from the former day, the court resolved that the computation of time was to be made; yet they say on a mere loan of money, by which I presume we are to understand a loan without fixed day of payment and consequently payable on demand, tho time would be computed from the date of the loan.
*290 Topham v. Braddick, 1 Taunton 571, was an action against a factor, to. whom goods had been sent, to sell on commission, for not accounting for those sold and'paying over the proceeds and returning the residue. It was held an action would not lie against him for not accounting, until after demand of an account had been made, and therefore the statute of limitations would run from the time of the demand only. Heath, justice, *said a demand must be either proved or presumed, [from length of time] in order to give the plaintiff a cause of action. Lawrence, justice, said, “This action would not lie at the end of a week, for the delivery of the goods; this is not like the case of money lent which is recoverable the next week. The goods were not delivered to be accounted for on the next day. They were to go to a distant country to be disposed of, and considerable time must be- allowed for their arrival there, for their sale, and for the return of the account.”
Holmes v. Kerrison, 2 Taunt. 323, was an action on promissory notes, payable at a certain number of days after sight; and the defendant pleaded the statute of limitations. The court held that no debt arose on a bill payable after sight, until a presentment for payment, and as there was no evidence that those bills had ever been presented, there was. no proof of a complete cause of action from which the statute could run.
In Fenton v. Emblers, 1 W. Bl. 353; 3 Burr. 1281, it was held that the statute, in case of a contingency, does not run from the making of the promise, but from the time of the happening of the contingency. In this case Lord Mansfield said, “ The statute proceeds on the presumption of laches, which can never happen until the contingency is determined.” Whenever therefore the contingency is determined, ór in other words, the party has a complete cause of action, and may sue, the laches begins, if he'delays his suit. *291 Hence then according to this doctrine, in case of a note payable on demand, as the payee may forthwith sue, his laches, if he does not, must forthwith commence.
In Savage v. Alden, 2 Starkie’s Cases 206, a promissory note was made and deposited with a banker, to bo delivered to the payee on his producing a certain other note cancelled. It was held that the cause of action did not accrue until the banker gave up the note, and consequently until then the statute did not begin to run. In Darnall’s Exr. v. Magruder, Harris and Gill 439, it was held that a receipt given for a sum of money borrowed, whereby the person borrowing undertook to return the money,- “ When called on to do so,” creates a cause of action from its date, and against which the act of limitation begins to run from that time.
In Ruff v. Bull, 7 Har. and Johnson 14, a note, on demand, was held to be payable at and from its date.
*The whole of these cases rest on the same great principle, and all point to the same conclusion. The time of limitation begins as soon as tho plaintiff has a full and complete cause of action and may maintain a suit; and is to be computed from the time when such legal claim of his right might have been made and enforced; and consequently on a promissory note payable on demand, as the payee may forthwith maintain an action, even without previous actual demand, the time is to be computed from the making of the note.
The counsel of tho plaintiffs in error draws an argument in favor of his position as to the time of the operation of the statute, from tho rule that interest on a note payable on demand is recoverable only from the demand in pais, or the commencement of the suit. The argument, however, is not sound. The contract on the part of the promissor is to pay the sum specified whenever the payee shall demand it. The promissor then cannot be said to be in neglect until a demand is made, and he fulfils his stipulations to the letter, if, when *292 required, he pays the amount he has promised. He ought not therefore to be treated as in default and charged with damages, or what is the same thing, interest, at an earlier day. But the payee may demand when he pleases. While he omits to demand be is deemed, in this respect, in laches; precisely as he is after a day of payment, when one is fixed ; and hence the difference, the time is computed against him, although the interest does not accrue against his debtor.
Upon the whole then, I am of opinion, that t'he time of limitation in the present case is to be computed from the date of the note, and that consequently the present action was not brought within six years after the cause of action accrued.
The plaintiffs in error insist that if such be the legal doctrine, they were, nevertheless, not rightly non-suited, because they say, within six years next before the commencement of this action, the defendant made such acknowledgment of the debt, as has taken the case out of ' the operation of the statute, by raising, in contemplation of law, a promise sufficient to sustain the plaintiffs’ action on the third count of the declaration, which alleges a promise by the defendant as administrator.
*The substance of the evidence of this acknowledgment is to the following effect: "On the 9th of August, 1825, the administrators of John Lambert, deceased, the plaintiffs, and a number of the heirs, had'met for the purpose of making a division of the proceeds of the property. Asher Lambert, the defendant, was present, and there was some conversation between him and the administrators of John Lambert, about this note. The administrators of John Lambert requested him to receipt for Cornelius Cory-ell’s share of'the estate, and they would indorse it on the note. Asher Lambert objected to it, and said he was not satisfied whether Cornelius Coryell’s estate or John L. Coryell's estate was to be accountable for it. He asked them to give a'certificate that they held such a note against *293 John L. Coryell, and they refused to do it. He then requested the privilege of copying the note, that he might shew it to his attorney, and inform himself whether Cornelius’ estate or John’s was liable to it. He did copy it.” “ The same day after these transactions, the administrators of John Lambert, deceased, called on Asher Jjambort to pay this note. Mr. Hoppock demanded payment of the note of Mr. Lambert. He said again he wished to inform' himself which of the estates would be accountable for it, and- they need not make themselves so uneasy, because they had the money in their own hands.” “ There was no pretence made but that one of the estates was liable.”
Here then, as the plaintiffs, contend, was proof of a suffi-' cient acknowledgment to take the case out of the statute. But by whom was this acknowledgment made? By Asher Lambert.. Was he then the administrator of John L. Cory-ell ? For if he was liot, it is manifest an acknowledgement or promise made by him will have no binding force or efficacy; nor acquire any, because he subsequently became administrator. There is no evidence in the bill of exceptions, neither by the letters of administration nor by oral testimony that Asher Lambert was on the 9th day of August, 1825, the administrator of John L. Coryell. The only witness examined being asked the question, whether he was then such administrator, replied that he did not know.
This suit is instituted against Asher Lambert as administrator, and as such he has pleaded, without denying the representative *capacity in which he is charged. Hence there is a legal presumption, which he cannot now be permitted to controvert, that he is the administrator, and was so at the commencement of this suit. But the legal inference goes no farther. The presumption that he was so at the institution of this suit cannot raise or sustain a farther presumption that he was so in August, 1825. The plaintiff’s counsel say truly that by the pleadings he stands *294 admitted to be administrator. But as just remarked, at no earlier period than the commencement of the suit. If he ■was not administrator, he should, says the plaintiff’s counsel, have pleaded in abatement. But surely it is not meant that he should have pleaded in abatement that he was not administrator at the time the promise is alleged to have been made. The want of competent character to make the promise; is a matter in bar, not in abatement. It brings the right, not the remedy, into question. It tends not merely to delay the suit, but to deny the cause of action.
Inasmuch then as there was no proof that the defendant was, at the time of the alleged acknowledgment, competent to make it or to bind the estate, it would be an unprofitable consumption of time to enquire whether the acknowledgment is in itself sufficient.
Upon the case as presented by the bill of exceptions, I am of opinion, the time allowed to the plaintiffs to commence their action had elapsed; and there is'no proof of any promise or acknowledgment, which can give' a new date, subsequent to that of the note, from which the computation of time can legally commence; and that there is no error in the decision of the Court of Common Pleas.
.There.is one point made by the plaintiff’s counsel, which should not be passed in silence. Among the issues as already noticed, is one of non-assumpsit by John L. Coryell. On the trial it was abundantly proved, that the note in question was signed by him; and hence it is said as there was proof on the part of the plaintiffs in support of the issue, the court should have submitted the cause to the jury, in order that the plaintiff might have a verdict on that issue, to which it is said they were entitled.
This position of the plaintiff’s counsel is incorrect. If the plaintiffs failed to shew a promise within six years on these ^issues, the court might rightfully non-suit. Such is the course of practice recognized and settled in the books. What would have been the profit of a verdict ior *295 the plaintiffs on that issue? They could have had no judgment upon it. Their counsel supposed it might affect the costs. But this is wrong. The plaintiffs could not have had the costs of that issue, not even by way of deduction or offset. 11 ISast. 263.
Judgment affirmed.