Parker v. Butterworth.

### LEAH PARKER v. WILLIAM L. BUTTERWORTH.

1. Sections 10 and 11 of the statute of limitations (*Rev. p.* 595,) which are in substance the same as 9 *Geo. IV., c.* 14, only changed the law with respect to the rules of evidence. The acknowledgment or promise to take a case out of the statute must now be in writing and signed by the party to be charged; but the acknowledgment or promise, when so proved, will have the same legal construction and effect as it would have had before the statute was passed. The endorsement or memorandum of payment by the party to whom payment is made is no longer sufficient proof thereof; but any payment, when proved by competent evidence *aliunde,* which would have been sufficient before the statute, is still sufficient to remove the bar of the statute.

2. From an unqualified acknowledgment of a subsisting debt the law will imply a promise which will obviate the bar of the statute; but if there be anything in the admission to repel the inference of a promise to pay, no promise will be implied, and the acknowledgment will not enable the plaintiff to recover; and if the acknowledgment be coupled with a promise which is qualified or conditional, neither the acknowledgment nor the promise will be available unless the condition has been performed, or the event happened, by which the promise is qualified.

3. Defendant, a joint maker of a promissory note, in a letter written to the plaintiff, admitted that he signed the note as surety, and added: " It would be impossible for me to pay the note at this time; therefore I shall be a thousand times obliged to thee if thee will allow it to rest until John" (the other maker) " or I, or both, are in better condition to liquidate it." *Held* to be a qualified promise by the defendant to pay when his circumstances had so improved that he had the ability to pay, and that the plaintiff could not make the promise available without affirmative proof of the substantial fulfilment of the condition.

4. A payment on account by one joint promisor will not remove the bar of the statute of limitations as against a copromisor in whose favor the statute had attached when the payment was made.

5. *Whitcomb* v. *Whiting* approved and explained. *Channell* v. *Ditchburn,* 5 *M. & W.* 494, and *Goddard* v. *Ingram,* 3 *Q. B.* 839, disapproved.

On rule to show cause why a verdict for the plaintiff should not be set aside.

Argued at February Term, 1884, before BEASLEY, CHIEF JUSTICE, and Justices DEPUE, SCUDDER and VAN SYCKEL.

For the rule, *James N. Stratton* and *Charles Haight.*

*Contra, James Steen.*

The opinion of the court was delivered by

DEPUE, J.   This suit was brought upon a joint and several promissory note made by John H. Woodward and William L. Butterworth, bearing date June 17th, 1867, for the sum of $1241.46, payable to Deborah Parker and Leah Parker, or the survivor of them, in one year after date.   Deborah died in 1874.   The suit was in the name of Leah, the survivor, as plaintiff, and, Woodward being out of the jurisdiction of the court, Butterworth alone was made defendant.   The action was begun by a summons returnable April 3d, 1883.   The defence was the statute of limitations.   To meet this defence the plaintiff relied (1) on an acknowledgment or promise to pay, contained in a letter written to her by Butterworth, the defendant, bearing date September 1st, 1877, and (2) upon a payment of $100 on the note made June 1st, 1882, by Woodward, the other joint maker.

By the Limitation act, as contained in the Revision, which went into effect January 1st, 1875, it is provided with respect to actions on simple contracts, first, that "no acknowledgment or promise by words only shall be deemed sufficient evidence of a new or continuing contract, whereby to take any case out of the operation of this act, or to deprive any person of the benefit thereof, unless such acknowledgment or promise shall be made or continued by or in some writing to be signed by the party chargeable thereby;" second, "that where there shall be two or more joint contractors or executors or administrators of any contractor, no such joint contractor, executor or administrator shall lose the benefit of this act so as to be chargeable in respect or by reason only of any written acknowledgment or promise, and signed by any other or others of them;" third, "that nothing herein contained shall alter or take away or lessen the effect of any payment of any principal or interest made by any person whatsoever;" fourth,

"that in actions to be commenced against two or more such joint contractors or executors or administrators, if it shall appear at the trial or otherwise that the plaintiff, though barred by this act as to one or more of such joint contractors or executors or administrators, shall, nevertheless, be entitled to recover against any other or others of the defendants, by virtue of a new acknowledgment or promise or otherwise, judgment may be given, and with costs allowed for the plaintiff as to such defendant or defendants against whom he shall recover, and for the other defendant or defendants against the plaintiff;" fifth, "that no endorsement or memorandum of any payment, written or made after this act shall go into effect, upon any promissory note, bill of exchange or other writing, by or on behalf of the party to whom such payment shall, be made, shall be deemed sufficient proof of such payment so as to take the case out of the operation of this act." *Rev., p.* 595, 596, §§ 10, 11.

These sections are in substance the same as sections 1 and 3 of 9 *Geo. IV.*, c. 14. The only change they made in the law is with respect to the rules of evidence. Before this statute an acknowledgment or promise to pay, or a payment on account, under some circumstances, would take a case out of the statute of limitations. The new statute simply required that the acknowledgment or promise to have that effect should be in writing, and signed by the party to be charged thereby. It made no alteration in the legal construction or effect of an acknowledgment or promise when proved in the manner prescribed by the statute, and the question whether the document written and signed "amounts to an acknowledgment or promise is no other inquiry than whether the same words, if proved, before the statute was enacted, to have been spoken by the defendant, would have had a similar operation and effect." *Haydon* v. *Williams*, 7 *Bing.* 163; *Edwards* v. *Culley*, 4 *H. & N.* 378; *Dickenson* v. *Hatfield*, 5 *C. & P.* 46; *Wood on Limitations*, § 84. The statute has made no change in the law with respect to payment on account, except that the endorsement or memorandum of the payment upon any

promissory note, bill of exchange or other writing, written or made after the act went into effect, by the party to whom payment is made, shall not be sufficient proof thereof. Payment, as a fact, must be proved by evidence *aliunde*. It may be proved by any kind of evidence, written or oral, which otherwise would be competent as proof of a matter of fact in issue; and any payment which would have been sufficient before this statute was passed is still sufficient to remove the bar of the statute of limitations. *Merritt* v. *Day*, 9 *Vroom* 32; *Cleave* v. *Jones*, 6 *Exch.* 573, 578; *Bevan* v. *Gething*, 3 *Q. B.* 740; *Bradley* v. *James*, 13 *C. B.* 822; *First Nat. Bank* v. *Ballou*, 49 *N. Y.* 155; *Wood on Limitations*, § 96.

The statute has the words "acknowledgment *or* promise" as the evidence of a new and continuing contract. The use of these words in the disjunctive in the statement of the law gave rise to a series of opposing authorities, in some of which it was held that the statute of limitations was founded on a mere presumption of payment, and that whatever repelled that presumption was an answer to the statute, and that therefore an acknowledgment of the non-payment of a debt, though accompanied by a conditional promise, or even a refusal to pay, was a sufficient answer to the statute. These cases were overruled by the Court of King's Bench before the act of 9 *Geo. IV.* was passed, in *Tanner* v. *Smart*, 6 *B. & C.* 603, a case which Baron Parke said put an end to a series of decisions which were a disgrace to the law. *Hart* v. *Pendegrast*, 14 *M. & W.* 741. Since the decision in Tanner *v.* Smart, the law in the English courts has been settled on this footing—that from a bare unqualified acknowledgment of a subsisting debt the law will imply a promise to pay which will obviate the bar of the statute, but that if there be in the admission, or on the face of the writing containing such an acknowledgment, anything to repel the inference of a promise to pay, the rule *expressum facit cessare tacitum* applies; no promise will be implied, and the acknowledgment will not enable the plaintiff to recover. And if the acknowledgment be coupled with a promise which is qualified or conditional,

neither the acknowledgment nor the promise will be available unless the condition has been performed or the event happened by which the promise is qualified. *Smith* v. *Thorn,* 18 *Q. B.* 134, 143; *Hart* v. *Pendegrast,* 14 *M. & W.* 741, 744; *Sidwell* v. *Mason,* 2 *H. & N.* 306, 309, 310; *Everitt* v. *Robertson,* 1 *El. & B.* 16–19; *In re River Steamer Co., L. R.* (6 *Ch. App.*) 822–828; *Street* v. *Lindsay, L. R.* (2 *Exch. Div.*) 314–316; *Wood on Limitations,* § 85. The weight of authority in the courts of this country is in accordance with the English doctrine, as will appear in the note of the American editors to *Whitcomb* v. *Whiting,* 1 *Sm. Lead. Cas.* 867; and such has been the course of decision in this state. *Belles* v. *Belles,* 7 *Hal.* 339; *Ridgway* v. *English,* 2 *Zab.* 409, 413, 419; *Ex'rs of Conover* v. *Conover, Saxt.* 403.

The defendant's letter of September 1st, 1877, relied on as an acknowledgment or promise, was written in answer to a letter of the plaintiff, which was not produced in evidence. No part of the defendant's letter, except the paragraph which will be quoted, contains anything which could be construed to be an acknowledgment or promise. That paragraph is in these words: "It would be impossible for me to pay the note at this time; therefore I shall be a thousand times obliged to thee if thee will allow it to rest until John or I, or both, are in better condition to liquidate it." It is clear that there is not in these words an unqualified promise to pay immediately or on request. The preceding paragraphs of the letter identify the note sued on as that to which the correspondence related, and contain an admission by the defendant that he signed the note as surety for Woodward. Taken in connection with the defendant's admission that he signed the note, and his declaration of his present inability to pay, I think the words quoted are sufficient to warrant the implication of a qualified promise by the defendant to pay when his circumstances had so improved that he had the ability to pay. To make such a promise available the plaintiff was bound to furnish affirmative proof of the substantial fulfilment of the condition. (*Tanner* v. *Smart, Haydon* v. *Williams, supra;*

*Scales* v. *Jacob*, 3 *Bing.* 638; *Ayton* v. *Bolt*, 4 *Id.* 105; *Edmunds* v. *Downs*, 2 *C. & M.* 459; *Meyerhoff* v. *Froehlich*, 4 *C. P. Div.* 63; *Tompkins* v. *Brown*, 1 *Denio*, 247; *Wood on Limitations*, § 77); and of that there was ·no evidence. The verdict cannot be sustained on the new promise of the defendant.

To take the case out of the statute of limitations by a payment on account, the plaintiff relied on a payment made by Woodward, one of the joint makers of the note. Woodward sent a draft to the plaintiff for $100 in a letter directed to her, dated Durango, Cal., May 9th, 1882. The plaintiff received the money on the draft, and, June 1st, 1882, credited it on the note. The letter remitting the draft gave no directions as to the appropriation of the money. The only reference to the subject is in these words: " Enclosed is draft for $100. It strained me to raise it, but I thought thee needed it." There was some evidence that there was another indebtedness on the part of Woodward to the plaintiff besides the note in suit. The judge left the question to the jury whether the payment was made on account of this note, under proper instructions, and I think there was sufficient evidence to justify the jury in finding that the payment was made thereon.

Woodward removed from this state shortly after the note was given. He resided in California when the suit was brought. Although the fact does not appear distinctly by the evidence, it is probable that his continued residence out of this state avoided the bar of the statute of limitations as against him. Butterworth resided in this state, and the statute was a bar to any action against him on the note at the time this payment was made. The problem presented by these facts is whether a payment on account by one joint promisor will remove the bar of the statute of limitations ·as against a co-promisor in whose favor the statute had attached when the payment was made.

The leading case on this subject is, of course, *Whitcomb* v. *Whiting*, 2 *Doug.* 652. In that case the declaration was in form on a promissory note executed by the defendant. Pleas,

*non assumpsit* and *non assumpsit infra sex annos*.   The plaintiff produced a joint and several note executed by the defendant and three others, and having proved payment by one of the others of interest on the note, and part of the principal within six years, and the judge thinking that was sufficient to take the case out of the statute as against the defendant, a verdict was found for the plaintiff.   On rule to show cause before Lord Mansfield, Chief Justice, and Willes, Ashurst and Buller, Justices, the verdict was sustained.   Lord Mansfield said, "Payment by one is payment by all, the one acting virtually as agent for the rest; and in the same manner an admission by one is an admission by all ; and the law raises the promise to pay when the debt is admitted to be due."   Willes, Justice, said, "The defendant has had the advantage of the partial payment, and therefore must be bound by it."   Ashurst and Buller, Justices, were of the same opinion.

Whitcomb *v.* Whiting, though not always approved, has been so frequently declared to be the law in this state that its force as authority cannot now be disputed.   I have quoted the case almost at length with a view of an inquiry as to what the case decided.   It will be observed that it does not appear in the report of the case that the note in suit was affected by the statute of limitations at the time the payment was made.   Indeed, it appears inferentially to have been otherwise, for no such point was made by counsel, and it is improbable that an available argument of so much plausibility, if not weight, should have been overlooked by counsel or passed by the court without comment.   Lord Mansfield's reasoning that "payment by one is payment by all, the one acting virtually as agent for the rest," could apply only to a payment made in the interest of all ; and the observation of Willes, Justice, that "the defendant had had the advantage of the partial payment, and therefore must be bound by it," would be wholly inapplicable if the defendant had been entirely released from his liability on the note by the statute when his copromisor made the payment.   The report of this case affords no warrant for the assumption that it decided that a payment within six

years before suit, by one promisor, would take a case out of the statute as against a copromisor, where the payment was made after the statute had effected a discharge of the latter from the joint obligation. The other leading English cases on the subject are *Burleigh* v. *Stott's Adm'r*, 8 *B. & C.* 36, and *Perham* v. *Raynal*, 2 *Bing*. 306, more fully reported in 9 *Moore* 566. In Burleigh *v.* Stott's Adm'r, the suit was against the administrator of Stott, one of the makers of a joint and several promissory note. The note was dated March 4th, 1818, and payable to Robert Burleigh, the plaintiff, on demand. Stott died March 3d, 1821. The suit was brought October 3d, 1826. It appeared that Thomas Burleigh, the other maker, and who was the principal debtor, on the 10th of October, 1818, paid the interest on the note to that day, and on the 10th of October, 1820, the interest then due, and a sum on account of the principal, without the knowledge of Stott. These payments were made by Burleigh whilst the joint liability of himself and Stott subsisted; and, as was said by Holroyd, Justice, Stott had the benefit of the part payment, and he ought to bear the burden. The court, following Whitcomb *v.* Whiting, gave judgment for the plaintiff. In Perham *v.* Raynal, one of the defendants was surety on a joint and several note, and within six years before suit a codefendant, who was the principal debtor, had acknowledged the debt to be due. It does not appear in either report of the case whether the acknowledgment was before or after the bar of the statute. The questions discussed and decided were whether Whitcomb *v.* Whiting was law, and whether an acknowledgment by the principal debtor could affect a surety.

The only cases in the English courts which directly decide that payment by one copromisor after the bar of the statute had attached would deprive the other promisor of the benefit of the statute, are *Channell* v. *Ditchburn*, 5 *M. & W.* 494, and *Goddard* v. *Ingram*, 3 *Q. B.* 839. In Channell *v.* Ditchburn the suit was against the makers of a joint and several promissory note. The proof was of the payment of interest by one of the makers within six years from the

commencement of the suit, but more than six years after the note became due. The debt had been once barred by the statute, and the court held that it was revived against both the makers by the payment of interest by one. The case was decided on the assumption that Whitcomb v. Whiting was a parallel case, and on the authority of *Manderston* v. *Robertson*, 4 *Man. & R.* 440. On looking at the report of Manderston v. Robertson it will be found that that point was not adverted to. In Goddard v. Ingram the suit was against surviving partners to recover the balance of a debt due on partnership account, on which one of the partners had made a small payment after the whole account was barred. The payment was made after the dissolution of the partnership, and when the partner making it was "in the jaws of bankruptcy," and the jury found that the payment was made by him in concert with the plaintiffs, in fraud of his copartners. This case was decided after Channell v. Ditchburn, and there was also prominent in it the question of the agency of partners in the matter of partnership business after a dissolution of the firm. The court set aside a verdict for the defendant without stating the grounds of decision, or assigning any reason except that they could not forbear to act on the numerous authorities.

There is another class of cases which will throw light on the principle involved in the matter under discussion. I refer to those decisions which hold that payment by one promisor after the death of his copromisor will not revive the debt as against the personal representatives of the latter. Of this class *Atkins* v. *Tredgold*, 2 *B. & C.* 23, is the leading case. The suit there was against the executors of John Tredgold on joint and several promissory notes made by John Tredgold and Robert Tredgold, bearing date respectively January 17th, 1806, and January 17th, 1809. John died in March, 1810, and Robert continued to pay the interest until May, 1816. The court, consisting of Abbott, Chief Justice, Bayley, Holroyd and Best, Justices, held that the payments made after the testator's death did not take the case out of the statute. All the judges

distinguished the case from Whitcomb v. Whiting, and declared their unwillingness to extend the principle of that decision. Bayley, Justice, speaking of Whitcomb v. Whiting, distinguished that case from the case then before the court, in that the statute had attached before the payment was made by Robert; and "therefore," he said, "John Tredgold being at that time protected, could not be subjected to any new obligation by the act of Robert." Holroyd, Justice, referring to Whitcomb v. Whiting, said, "That case has gone far enough, but it does not govern the present. There the defendant Whiting was liable upon a joint promise at the time the payment was made. The court decided that when one of two joint promisors pays a part, that was to be considered in law as a payment by both. But here, at the time when the payment was made, the joint contract had ceased to exist; for it was determined by the death of John Tredgold."

Turning from the English decisions to the cases in our courts, we find Whitcomb v. Whiting approved and followed in *Corlies* v. *Fleming*, 1 *Vroom* 349. In that case the suit was commenced July 11th, 1861, against the two defendants, on a joint and several note given by them and one Farrington, since deceased, dated September 4th, 1850. The interest on the note had been paid by Fleming every year to the year 1860 inclusive. Each payment of interest was made at a time when the joint liability of the defendants existed, and each one of these payments renewed the joint obligation for six years. *Disborough* v. *Bidleman's Heirs*, 1 *Zab.* 677, approved Whitcomb v. Whiting, and followed Atkins v. Tredgold. The suit was against the heirs of a deceased obligor on a bond which was joint and several. This court, and the Court of Errors, held that a payment on the bond by the surviving obligor, after the death of his co-obligor, did not take the case out of the statute as against the heirs of the latter. This decision was made on the authority and reasoning of Atkins v. Tredgold, that the payment was not made whilst the joint obligation of the two parties existed, and that the agency of the one to act for and bind the other ceased when

their joint liability was ended.   Whitcomb v. Whiting was again approved in this court in *Merritt* v. *Dey,* 9 *Vroom* 32. That suit was against partners on a firm note.   The payment by one partner, which was regarded as taking the case out of the statute, though made after the dissolution of the partnership, was before the time of limitation had lapsed.   The Chief Justice in his opinion gives that circumstance special prominence, and in commenting on Whitcomb v. Whiting deduces "a right    *    *    *    in either of the joint debtors to arrest by his sole act the running of the statute," "from the existence of the joint indebtedness," and "infers from the fact of the joint obligation and the unity of interest the agency to renew the contract as against the force of the statute."

We are bound by Whitcomb v. Whiting, for the reason I have mentioned; but the other English cases I have cited we are under no constraint to follow, except so far as they have already been adopted by our courts.   The doctrine that a joint debt, when once barred by the statute, can be revived as against all the original debtors by the unauthorized act of one of them, adjudged in Channell v. Ditchburn and Goddard v. Ingram, has neither reason nor justice for its support.   That such a doctrine was considered as either unjust or unwise is shown by the fact that in England it has been overturned by act of parliament.   19 and 20 *Vic., c.* 97, § 14.   The true principle on which Whitcomb v. Whiting rests is that of the agency of joint debtors for each other, inferred from the unity of their interest, which makes the act of payment by the one the act of all—an agency which, arising out of the joint indebtedness, subsists only so long as the joint indebtedness continues, and ceases as soon as, the joint liability being determined, the parties become as strangers to each other. Atkins v. Tredgold and Disborough v. Bidleman's Heirs were decided on this reasoning, and there is no rational distinction between the determination of the joint interest of the parties by death and its termination by the bar of the statute of limitations, which makes the lapse of time a positive and

legal bar in all cases within its provisions. *Thorpe* v. *Corwin, Spenc.* 311.

I have not referred to cases in the courts of our sister states. Whitcomb *v.* Whiting has given rise to so much discussion, with great diversity of views, and been so denied and qualified, not only by judicial decisions but by legislation, that a reference to the American cases would be of little profit. The courts of some of the other states have adopted the same views on this subject that we have expressed, as will be seen by the notes to *Whitcomb* v. *Whiting*, 1 *Sm. Lead. Cas.*

The verdict should be set aside and a new trial granted.