84 N.J. Super. 164 (1964)
201 A.2d 380
DENVILLE AMUSEMENT COMPANY, INC., ETC., PLAINTIFF-RESPONDENT,
v.
GUSTAVA FOGELSON, AS EXECUTRIX OF THE ESTATE OF MORRIS H. FOGELSON, DECEASED, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued April 27, 1964.
Decided June 5, 1964.
*166 Before Judges CONFORD, FREUND and SULLIVAN.
Mr. Lewis Stein argued the cause for appellant (Mr. Milford Salny, attorney; Mr. Stein, on the brief).
Mr. Matthew D.F. Wade argued the cause for respondent.
The opinion of the court was delivered by FREUND, J.A.D.
This is an appeal by the executrix of the estate of Morris H. Fogelson from a judgment of $18,389.49, the amount shown on plaintiff's corporate books as loans made to Fogelson during his lifetime which are still unpaid.
Plaintiff, incorporated in 1936, owns a motion picture theater and certain store premises in Denville, N.J. Its 150 shares of capital stock were held as follows: Morris H. Fogelson, 70 shares; Michael C. Gallo, 60 shares; Mary Gallo, his wife, 10 shares; Edith Gallo Wade, his daughter, 10 shares. Fogelson, an accountant by profession, was secretary-treasurer of the corporation from its inception until his death in 1960. In this capacity he was responsible for preparing the financial reports, and the corporate books were at all times here relevant in his possession. Fogelson was also the only stockholder actively engaged in managing the business.
It is undisputed that the corporation's financial report of December 31, 1959, which was prepared personally by the decedent, contained the following entry:

 "Loans Receivable:
 M.C. Gallo, $18,389.49
 M.H. Fogelson, $18,389.49 $36,778.98"

*167 Appellant denies this ostensible indebtedness. She contends that the moneys advanced to her decedent were in fact payments of salary or dividends, alleging that Michael Gallo and decedent had mutually agreed to withdraw funds as needed but to have the transactions recorded for accounting purposes as loans, or, upon the dissolution of the corporation or the death of one of them, to treat the sums advanced as part of the distribution of corporate assets.
There was evidence capable of raising inferences that this was so. There were no corporate resolutions authorizing loans to officers; no evidences of indebtedness were held by the corporation; by December 31, 1959 the loans outstanding to Gallo and decedent were to the penny the same. As part of his report for the year ending December 31, 1945 decedent recommended that the corporation be given notes for the balances due it from the officers, because "for Federal Income Tax purposes the government might contend that the above advances to Michael C. Gallo and Morris H. Fogelson [$10,257.29 and $8,341.11, respectively] shall be taxable to the individuals as dividend income." As noted above, however, no notes were actually ever given.
But merely because there is a basis to suspect that these withdrawals were taken in the form of loans in order to avoid the impact of personal income taxation does not mean that these transactions are not to be considered legal loan obligations to the corporation. The test is the existence of a mutual intent for repayment. Did Gallo and decedent actually regard these advances as loans? There was evidence that they did. Gallo testified that they had discussed these loans on several occasions, and although they never set a specific date for repayment, there was a definite understanding that the moneys would be repaid. The loans first made to Gallo were in response to his request for funds he needed for another business of his own. Small salaries were paid, and dividends were distributed on occasion. For several years the amounts advanced to Gallo and the decedent were substantially disparate. And, of course, there is the fact that Fogelson himself *168 characterized these transactions as loans when he prepared the corporation's financial reports.
The trial court, sitting without a jury, concluded that the decedent had been indebted to the corporation and entered judgment in favor of plaintiff. Appellant argues that such a determination was against the weight of the evidence, but we do not agree. We have already referred to the testimony in support of such a conclusion. The trial court stated in its oral opinion that it believed Michael Gallo and Edith Gallo Wade when they testified that there was a general understanding among the officers of the corporation that the loans were to be repaid. And, as the court pointed out, there was no positive evidence to the contrary. In our view there was only the inference that these advances were recorded as loans so as not to have those moneys taxable to the individual recipients. But, as noted above, this does not mean that the decedent did not believe himself morally and legally obligated to repay them. This, in our view, would be the decisive issue even if, as appellant contends, federal tax decisions indicate that the payments would be deemed salaries or dividends and not loans. We are not impressed with a defense which rests almost entirely upon an implication by an executrix that, in effect, corporate accounts on their face indicating loans were so shown by her decedent to conceal the fact that the transactions were actually dividends or salary.
N.J.S. 2A:81-2 states in part as follows:
"* * * when 1 party sues or is sued in a representative capacity, any other party who asserts a claim or an affirmative defense against such * * * representative, supported by oral testimony of a promise, statement or act * * * of the decedent, shall be required to establish the same by clear and convincing proof."
It is manifest that the primary (and perhaps exclusive) thrust of this provision is to diminish the likelihood of feigned claims or defenses based upon transactions with a decedent where the decedent can no longer contradict them. It would appear that so stringent a standard of proof would *169 not be necessary where such a claim or defense was predicated upon written evidence. We need not decide, however, whether this section applies only to cases where oral testimony is the sole proof offered, or applies to all cases wherein there is any oral proof, since the trial court deemed itself bound to use this standard of proof as a general rule in deciding the case. After seeing and hearing the witnesses the court was satisfied that the proofs in favor of plaintiff were clear and convincing. We find nothing in the record to require a contrary conclusion.
Defendant takes the alternative position that her liability cannot exceed $1,000 because all but that amount of the loans was advanced more than six years prior to the commencement of this action and recovery thereof is thus barred by the statute of limitations, N.J.S. 2A:14-1. Where there is no time stated between debtor and creditor as to when the payment of a money obligation shall be due, it is deemed payable on demand. Green v. Richards, 23 N.J. Eq. 32, 34-35 (Ch. 1872), affirmed Richards v. Green, 23 N.J. Eq. 536, 540 (E. & A. 1872). A cause of action based upon a money obligation which is payable on demand is deemed to accrue at the time of the loan. DeRaismes v. DeRaismes, 70 N.J.L. 15, 18-19 (Sup. Ct. 1903), affirmed 71 N.J.L. 680 (E. & A. 1905); Larason v. Lambert, 12 N.J.L. 247, 249 (Sup. Ct. 1831).
Plaintiff counters with the contention that the decedent lifted the bar of the statute by acknowledging the loans in preparing the annual corporate financial reports which included his as well as Gallo's obligation to the corporation and in signing letters of transmittal of such reports as corporate treasurer, addressed to the president of the corporation, within the six-year period. Defendant responds that the submission of such reports does not constitute a personal acknowledgment of the debt to the corporation by the decedent such as will support the implication of a promise by him to pay it, as required by the cases construing the applicable statute.
*170 N.J.S. 2A:14-24 provides that in respect of a contract action "no acknowledgment or promise by words only" shall suffice to take any case out of the statute of limitations, and that a writing signed by the party to be charged is requisite therefor. In addition to the requirement of a writing it is also necessary that the acknowledgment relied upon be such as in its entirety fairly supports an implication of a promise to pay the debt immediately or on demand. Bassett v. Christensen, 127 N.J.L. 259, 261 (E. & A. 1941); Howell v. Wallace, 18 N.J. Misc. 48, 51 (Cir. Ct. 1939, per Jayne, C.C.J.). And see Parker v. Butterworth, 46 N.J.L. 244 (Sup. Ct. 1884). Cf. 1A Corbin, Contracts, § 216, pp. 297-300 (1963). Moreover, "the current tendency is in favor of the statute of limitations and against the construction of a statement as an acknowledgment or promise which will avoid its operation." 54 C.J.S. Limitations of Actions § 302, pp. 368-369.
Before applying these principles to the facts at hand, certain implications of the position contended for on behalf of the plaintiff deserve notice. This corporation is one in which Gallo and his immediate family held and still hold 80 shares of stock, as contrasted with the 70 shares owned by the decedent. There are no other outstanding stock interests. The supposed obligation of Fogelson is matched by an equal one owed by Gallo. But Gallo is in a position, if sued by or on behalf of plaintiff corporation, to assert the bar of the statute of limitations against any claim except one to pay his debt in installments over a five-year period after September 5, 1961, without interest, and subject to plaintiff's recovering in the present action. This is for the reason that the only written acknowledgment by Gallo of his debt is a letter of September 25, 1961 specifying the stated conditions for payment thereof, which offer was accepted by the corporation. Assuming, arguendo, that such conditions do not destroy the efficacy of the acknowledgment, recovery from defendant might thus result in a situation wherein the Gallo-controlled corporation would realize on the claim against Fogelson at *171 once, with interest to accrue on the judgment if unpaid, but not on the claim against Gallo himself except in installments over a five-year period without interest.
But be that as it may, and conceding that defendant might have equitable recourse against Gallo in the projected contingency, we are satisfied that decedent did not acknowledge the debt so as to justify an implication of a promise to pay it forthwith or on demand, and thereby deprive himself of the benefit of the statutory bar. The only writings presented capable of lifting that bar are the letters of transmittal, signed by the decedent as treasurer of the corporation, which accompanied the annual corporate financial reports, prepared by the decedent as the company's accountant. In those capacities he had an official obligation to report to the corporation all obligations owing to the company agreeably to its books, and to omit none. It is completely fictional to impute to Fogelson's action of submitting these documents, done as it was in this special capacity, an intention or promise, implied or otherwise, to pay the debts recorded therein immediately or on demand, as required by our cases, or indeed at all. It is equally fictional to suppose that the corporation or Gallo, president thereof, to whose attention the letters of transmittal were addressed, could have fairly drawn such an implication from them.
The distinction we make is not merely a technical one, but goes to the heart of the rationale by which an acknowledgment of a debt can operate to take a contract claim out of the statute of limitations. The question is not whether the reports are competent proof of the original existence of the debt. We have relied upon them above in concluding the debt was proven. The question is whether these reports, when considered in the context in which they were prepared and submitted to the corporation, can justly support an inference of a new promise to pay the debt on demand. When the central issue is posed in this manner we find a negative resolution to be the only realistic one. While the Bassett, Howell and Parker cases, cited above, held the acknowledgments there involved not effective *172 because they were positively inconsistent on their face with an unconditional promise to pay at once, the principle they stand for is broader, and extends to any case where the asserted acknowledgment in the light of its entire character cannot fairly give rise to an implication of a promise to pay the debt immediately or upon demand. And if, indeed, concomitant oral expressions can be resorted to for purposes of proving intention, the testimony in this case was that decedent said, "We'll pay some day." This is of a piece with the qualified character of the acknowledgments held ineffective in the Bassett, Howell and Parker cases, supra. Cf. Rickenbach v. Noecker Shipbuilding Co., 66 N.J. Super. 580 (Ch. Div. 1961), where the court discussed the contention that inclusion of corporate obligations to an officer in the corporate books constituted an acknowledgment sufficient to avoid the bar of limitations, but held adversely to the creditor because the balance sheets were not signed by officers with authority to bind the corporation. Nothing said in that opinion is relevant here.
In In re Meyrowitz' Estate, 114 N.Y.S.2d 541 (Surr. Ct. 1952), affirmed 284 App. Div. 801, 132 N.Y.S.2d 327 (App. Div. 1954), appeal denied 284 App. Div. 844, 134 N.Y.S. 587 (1954), the debt of the decedent, controlling stockholder and principal officer of the creditor corporation, was held revived as against the bar of limitations by corporate balance sheets showing the debt although not signed by decedent but only by corporate agents. This seems to us questionable authority insofar as the matter of construction of our act is concerned, especially in the light of our own decisions, discussed above. The court was at pains to fortify its conclusion on entirely different grounds. Cf. United States v. Jacobs, 155 F. Supp. 182, 191 (D.N.J. 1957).
For the foregoing reasons, the judgment is reversed and the cause remanded with directions to enter a new judgment in favor of plaintiff in the amount of $1,000. No costs to either party.