**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0723-23

STEVEN J. KARVELLAS,

     Plaintiff-Respondent,

v.

STEPHEN E. SWEENEY and
LEREGAZZI, L.L.C.,

     Defendants-Appellants.

_____

Argued October 30, 2024 – Decided November 19, 2024

Before Judges Mayer, Rose and Puglisi.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-2604-20.

Christopher D. Kratovil (Dykema Gossett PLLC) of the Texas bar, admitted pro hac vice, argued the cause for appellants (Brach Eichler LLC and Christopher D. Kratovil, attorneys; Bob Kasolas and Mark E. Critchley, of counsel and on the briefs).

Michele-Lee Shapiro argued the cause for respondent (Brown Moskowitz & Kallen, PC, attorneys; Kenneth L. Moskowitz and Michele-Lee Shapiro, of counsel and on the brief).

PER CURIAM

Defendants Stephen E. Sweeney (Sweeney) and LeRegazzi, L.L.C. (LeRegazzi) (collectively, defendants) appeal from a September 5, 2023 amended order and final judgment entered in favor of plaintiff Steven J. Karvellas after a three-day bench trial before Judge Nicholas Ostuni. Defendants also appeal from an October 18, 2023 order denying their motion for reconsideration. We affirm all orders on appeal for the detailed and comprehensive reasons stated in Judge Ostuni's sixty-three-page written decision.

We presume the parties are familiar with the facts. In his thorough, thoughtful, and meticulous decision, Judge Ostuni set forth his findings of fact based on his credibility determinations after observing and listening to the witnesses during the three-day trial. We provide a summary of those facts to give context to our decision.

Plaintiff and Sweeney were close friends. In 2008, plaintiff made two loans to Sweeney (First and Second Loans). Under the First Loan, Sweeney signed a Note borrowing $330,000 from plaintiff at a ten percent interest rate. LeRegazzi guaranteed Sweeney's obligations under the First Loan. A mortgage on LeRegazzi's office building secured the guarantee.

2

Because he needed more money prior to the written memorialization of the First Loan, Sweeney asked plaintiff for yet another loan. This request resulted in the Second Loan. Under the Second Loan, Sweeney borrowed $50,000 from plaintiff at a ten percent interest rate.

Not long after he signed the loans, Sweeney failed to remit payment when due. Knowing he was in default, Sweeney, on multiple occasions, implored plaintiff to forbear from enforcing his rights under the First and Second Loans. Sweeney asked plaintiff for an opportunity to cure his default. Each time, Sweeney assured plaintiff that the loans would be paid in full.

Based on their longstanding friendship, plaintiff refrained from declaring Sweeney to be in default under the First and Second Loans. Over the next several years, plaintiff continued to forbear from enforcement of his rights under the First and Second Loans.

In April 2013, Sweeney invited plaintiff to attend the closing involving Sweeney's refinancing of certain real property. Sweeney indicated the money he expected to receive at the closing would pay off the nearly $495,000 balance due to plaintiff under the First and Second Loans. Sweeney said he would issue a check to plaintiff at the closing for the full amount owed.

A-0723-23

Instead of tendering the full amount owed under the First and Second Loans at the closing, Sweeney gave plaintiff a check for $330,000. Sweeney explained he "needed the money for other things" and could not pay the entire amount owed as promised due to "other obligations." Sweeney beseeched plaintiff to accept the partial payment check and discharge the mortgage securing LeRegazzi's guarantee.

Plaintiff accepted the partial payment and agreed to discharge the mortgage. By discharging the mortgage, plaintiff extinguished the First and Second Loans.

The parties entered into a new loan agreement (Third Loan) for Sweeney's payment of the $165,000 remaining balance due under the First and Second Loans. Plaintiff expressly agreed to reduce the amount Sweeney owed by $30,000 and waived the late penalties and interest accrued under the First and Second Loans. Under the Third Loan, Sweeney agreed to pay $134,759.74 at a ten percent interest rate as soon as he was able to do so. LeRegazzi guaranteed the Third Loan.

A-0723-23

Sweeney subsequently sent plaintiff an August 7, 2013 email confirming the terms of the Third Loan with an attached payment schedule.[1] Between April 2013 and October 2019, Sweeney failed to make any payments under the Third Loan. Whenever plaintiff requested payment, Sweeney responded he was unable to do so and proffered different reasons why he could not make the payments under the Third Loan. Whenever the two spoke, Sweeney told plaintiff he was working on new deals and anticipated being able to pay off the debt in the near future.

In October 2019, during a meeting with plaintiff at a Starbucks in Las Vegas, Sweeney bragged about his financial achievements, including a business deal that would result in Sweeney realizing between $20 and $40 million. Sweeney claimed he had a big "payday coming" and would finally be able to pay off the Third Loan "within twenty days" or, at the latest, the end of 2019. Plaintiff recorded this conversation.

Sweeney failed to pay the Third Loan by the end of 2019. In May 2020, plaintiff filed suit against defendants, alleging breach of contract and unjust

---

[1] In his August 7, 2013 email, Sweeney confirmed $139,773.03 remained due and owing to plaintiff. However, the parties later agreed the principal sum owed was actually $134,759.74, which reflected a reduction of $5,013.29 in late fees waived by plaintiff.

A-0723-23

enrichment. In 2023, after a three-day bench trial, the judge found the Third Loan was a valid "pay-when-able" loan which became enforceable in 2019 when Sweeney first stated he had the ability to pay. The judge further found defendants were jointly and severally liable for the outstanding balance on the Third Loan in the amount of $271,085.52, plus post-judgment interest at a rate of ten percent.

Defendants filed a motion for reconsideration, which the judge denied.

On appeal, defendants argue the following: (1) the Third Loan was not an enforceable contract; (2) even if it was enforceable, the Third Loan merely continued the first two loans and was time-barred; (3) plaintiff failed to prove the Third Loan was a "pay-when-able" loan; (4) New Jersey does not recognize "pay-when-able" loans; (5) because the Third Loan was not a "pay-when-able" loan, the six-year statute of limitations commenced in 2013 when the Third Loan was negotiated; (6) defendants were entitled to pursue a statute of limitations defense; (7) plaintiff's discharge of the mortgage securing LeRegazzi's guarantee on the First Loan satisfied Sweeney's debt in full; (8) defendants did not breach the Third Loan; (9) defendants were not unjustly enriched; (10) the statute of frauds precluded LeRegazzi from joint and several liability; and (11)

6

post-judgment interest should have been assessed in accordance with Rule 4:42-11.

We reject defendants' arguments for the cogent reasons expressed by Judge Ostuni in his comprehensive written decision. We defer to Judge Ostuni's finding that Sweeney's trial testimony was not credible and he failed to present any competent or believable countervailing evidence. We provide the following comments to amplify our decision affirming Judge Ostuni's September 5, 2023 amended order and final judgment and October 18, 2023 order.

"Final determinations made by the trial court sitting in a non-jury case are subject to a limited and well-established scope of review." D'Agostino v. Maldonado, 216 N.J. 168, 182 (2013) (quoting Seidman v. Clifton Sav. Bank, S.L.A., 205 N.J. 150, 169 (2011)). We "give deference to the trial court that heard the witnesses, sifted the competing evidence, and made reasoned conclusions." Allstate Ins. Co. v. Northfield Med. Ctr., P.C., 228 N.J. 596, 619 (2017) (quoting Griepenburg v. Twp. of Ocean, 220 N.J. 239, 254 (2015)). "When evidence is testimonial and involves credibility questions, deference is 'especially appropriate' because the trial judge is the one who has observed the witnesses first-hand." In re D.L.B., 468 N.J. Super. 397, 416 (App. Div. 2021) (quoting Cesare v. Cesare, 154 N.J. 394, 412 (1998)). "That is so because an

appellate court's review of a cold record is no substitute for the trial court's opportunity to hear and see the witnesses who testified on the stand." Balducci v. Cige, 240 N.J. 574, 595 (2020) (citing State v. Elders, 192 N.J. 224, 244 (2007)).

The findings rendered by a trial judge are binding on appeal when supported by substantial credible evidence. See Reilly v. Weiss, 406 N.J. Super. 71, 77 (App. Div. 2009) (quoting Rova Farms Resort, Inc. v. Invs. Ins. Co., 65 N.J. 474, 484 (1974)). We will not disturb a trial judge's fact-findings unless "they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Seidman, 205 N.J. at 169. However, "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

Here, Judge Ostuni rendered comprehensive factual findings that are entitled to our deference. The judge assessed the credibility of the witnesses who testified during the bench trial. Based on Judge Ostuni's detailed findings of fact and credibility assessments, he rendered legal conclusions addressing each issue raised during the trial. We affirm for the reasons stated by Judge

8

Ostuni because his factual and credibility findings were based on substantial credible evidence and his legal conclusions were correct.

We are satisfied Judge Ostuni correctly concluded "pay-when-able" loans are valid and enforceable in New Jersey. New Jersey law has recognized "pay-when-able" loans since Parker v. Butterworth, 46 N.J.L. 244 (Sup. Ct. 1884). In Parker, the defendant urged the plaintiff not to foreclose on a note stating, "[i]t would be impossible for me to pay the note at this time; therefore I shall be a thousand times obliged to thee if thee will allow it to rest until [a co-debtor] or I, or both, are in better condition to liquidate it." Id. at 248. The Parker court held those words established "a qualified promise by the defendant to pay when his circumstances had so improved that he had the ability to pay." Ibid. In that case, to establish a breach of a "pay[-]when[-]able" contract, the plaintiff "was bound to furnish affirmative proof of the substantial fulfilment of the condition" by establishing the defendant's ability to pay. Ibid.

Judge Ostuni found ample credible evidence in the record, not only through the trial testimony, but also the corroborating documents admitted during the trial, to establish the Third Loan as a pay-when-able loan. Here, plaintiff learned during the Starbucks meeting in October 2019 that Sweeney was in a financial position to pay the Third Loan. Judge Ostuni noted it was

9

during this meeting, which plaintiff recorded, that Sweeney bragged about his recent financial successes. The judge also found the October 2019 meeting was the first time Sweeney told plaintiff he no longer had money issues.

In upholding the validity of a "pay-when-able" loan, Judge Ostuni cited Guerin v. Cassidy, 38 N.J. Super. 454, 457 (Ch. Div. 1955). In Guerin, the trial judge found a promise providing for "payment 'as I can' . . . is tantamount to a promise to pay 'when able.' In the event of such a promise, a plaintiff, to succeed, must allege and prove the ability of the debtor to pay in accordance with the terms of the contract." Id. at 461.

Judge Ostuni also cited Denville Amusement Co. v. Fogelson, 84 N.J. Super. 164, 169 (App. Div. 1964), in determining pay-when-able loans are enforceable. In that case, we held there was testimony and documentary evidence supporting the defendant decedent's indebtedness to the plaintiff corporation as a demand loan rather than a pay-when-able loan. Id. at 171. Nothing in our decision in Denville Amusement declared a pay-when-able loan invalid.

Based on these cases, we agree with Judge Ostuni that New Jersey courts recognize and will enforce "pay-when-able" loans, as in this case, when a plaintiff proves the defendant is able to pay based on more than the plaintiff

creditor's testimony. As Judge Ostuni recognized, pay-when-able loans are enforceable "particularly when the loans are made between family members or close friends." Moreover, defendants failed to cite any binding case law in New Jersey rejecting the validity of a pay-when-able loan.

Here, Judge Ostuni found the following: plaintiff and Sweeney were close friends; for several years, plaintiff agreed to forbear from enforcement of his rights under the loans; plaintiff forgave a substantial sum of money due to him under the First and Second Loans; Sweeney admitted owing the debt under the Third Loan, in writing and in a recorded conversation; Sweeney first represented he had the financial means to repay the money due under the Third Loan in October 2019; and plaintiff timely filed his complaint against defendants in May 2020, less than one year after Sweeney revealed he possessed sufficient funds to pay the Third Loan.

Judge Ostuni then concluded the six-year statute of limitations under N.J.S.A. 2A:14-1(a) did not bar plaintiff's complaint because the Third Loan was a valid contract presented as a "pay-when-able" loan. The judge found a breach of contract action based on a pay-when-able loan commences when a plaintiff learns a defendant is able to pay. Judge Ostuni found plaintiff first learned Sweeney could pay off the Third Loan in October 2019 during the Las

11

Vegas meeting. Thus, the judge determined plaintiff's complaint, filed in May 2020, was not barred by the six-year statute of limitations.

Further, there was ample evidence in the record to support the judge's finding the Third Loan was a valid and enforceable contract. Based on the trial evidence, witness testimony, and credibility determinations, Judge Ostuni found plaintiff and Sweeney agreed on April 26, 2013 to enter into the Third Loan. He concluded the parties settled the essential terms of the Third Loan and agreed to be bound by those terms as memorialized in Sweeney's August 7, 2013 email. Additionally, Judge Ostuni found this email constituted plaintiff's offer to loan money and Sweeney's acceptance of that offer. The judge determined there was consideration for the Third Loan in the form of plaintiff's continued forbearance in exercising his right to enforce Sweeney's payment obligations and discharging the mortgage security under the First and Second Loans.

Further, based on the trial evidence and testimony, we are satisfied Judge Ostuni properly found the Third Loan satisfied the requirements for a novation. The elements of a novation are: "(1) a previously valid contract; (2) an agreement to make a new contract; (3) a valid new contract; and (4) an intent to extinguish the old contract." Wells Reit II-80 Park Plaza, LLC v. Dir., Div. of Tax'n, 414 N.J. Super. 453, 466 (App. Div. 2010). To find a novation, "there

12

must be a clear and definite intention on the part of all concerned that [novation] is the purpose of the agreement, for it is a well settled principle that novation is never to be presumed." Id. at 467 (quoting Sixteenth Ward Bldg. & Loan Ass'n of Newark v. Reliable Loan Mortg. & Sec. Co., 125 N.J. Eq. 340, 342-43 (E. & A. 1939)). "[S]uch an intention need not be shown by express words to that effect, but . . . may be implied from the facts and circumstances attending the transaction and the conduct of the parties thereafter." Sixteenth Ward Bldg. & Loan Ass'n of Newark, 125 N.J. Eq. at 343. "Because intent is the primary inquiry, the issue of whether there was a novation is generally a question of fact." Wells Reit II-80 Park Plaza, 414 N.J. Super. at 467.

In his findings of fact, Judge Ostuni determined the elements for establishing a novation were satisfied. He found the First and Second Loans were valid contracts; the actions taken by the parties on April 26, 2013, including plaintiff's discharge of the LeRegazzi mortgage, constituted an agreement to make a new contract in the form of the Third Loan; the Third Loan was a valid contract; and the parties actions on April 26, 2013, and their subsequent conduct supported an intent to extinguish the First and Second Loans and replace those agreements with the Third Loan.

A-0723-23

Because we agree with Judge Ostuni that plaintiff's complaint was timely filed, we need not consider defendants' argument that the judge erred in applying the doctrine of equitable estoppel to bar their statute of limitations defense.

Nor do we discern any error in Judge Ostuni's decision holding LeRegazzi jointly and severally liable. Defendants argue the statute of frauds precluded imposition of liability against LeRegazzi because the guarantee under the Third Loan was not in writing.

Although defendants asserted the statute of frauds as an affirmative defense in their answer to the complaint, defendants first raised this issue in their reconsideration motion. At no time prior to the trial, despite filing several pretrial motions, or at any time during the trial did defendants argue the statute of frauds precluded imposing liability against LeRegazzi. See Williams v. Bell Telephone Lab., Inc., 132 N.J. 109, 119-20 (1993) (holding where a statute of limitations defense is included as an affirmative defense in a pleading but the defense was not raised until after the trial, the defense is effectively waived). Consequently, Judge Ostuni correctly concluded defendants waived the statute of frauds defense, and he properly denied the motion for reconsideration.

A-0723-23

To the extent we have not addressed any arguments raised by defendants, they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0723-23