JAMES MORECRAFT, DEFENDANT IN ERROR, v. JANE ALLEN, PLAINTIFF IN ERROR.

Submitted December 6, 1909—Decided February 28, 1910.

1. Where the parties to an existing agreement found themselves unable to agree upon the amount due thereunder, it was competent for them to adjust their differences by another contract whereby the one obligated herself to pay to the other a fixed sum of money in settlement of their mutual accounts. *Held*, that the later contract, under the doctrine of novation, was substituted for the earlier contract, and the rights of the parties were controlled by its terms, the earlier contract being thereby extinguished.
2. Whether such a contract of novation was made, was, where the facts were in dispute, a question for the jury.

On error to Hudson Circuit.

For the plaintiff in error, *Hugh K. Gaston* and *Nelson Y. Dungan.*

For the defendant in error, *Roberson & Demarest.*

The opinion of the court was delivered by

MINTURN, J.   The declaration, which was upon the common counts, contained this bill of particulars: "To board of defendant with plaintiff from 1889 to 1894 intermittently, and board from 1894 to 1904 as per agreement between plaintiff and defendant, whereby the defendant agreed on or about the 1st day of September, 1904, to pay to the said plaintiff for said services the sum of $500."

To this the defendant pleaded the general issue and the statute of limitations, and the plaintiff replied.

The facts elicited at the trial were that the plaintiff, a builder residing at Bayonne, arranged with the defendant, his aunt, to reside with him, and that she did reside with him in the year 1888 and on and off until 1894, after which latter year she resided with him continuously until 1904. In 1894

the defendant purchased a lot adjoining the plaintiff's home, upon which she erected a small house, and then entered into a verbal agreement with the plaintiff that, in consideration of her board at his home, she would allow him to collect and retain the rents of her house during her life, and upon her death he should receive the property itself. The defendant, an aged lady, after making this agreement, continued in the plaintiff's household, performing no particular service, and received the attentions of the plaintiff's family as a member of his household, while he, in pursuance of the agreement, collected the rents, and after the payment of certain claims, municipal and otherwise, against the property, and some claims against the defendant personally, retained the balance of the rents for his own use.

In 1904 the defendant, becoming suspicious of the plaintiff's intentions regarding her property, decided to give up her residence with the plaintiff, and then inquired of plaintiff as to her indebtedness, to which plaintiff replied that he thought she owed him $1,000, but that he would take $500 in settlement. To this the defendant assented, and, according to the testimony of plaintiff and his wife, then agreed with plaintiff to pay him $500 in settlement of their mutual accounts. The defendant thereafter applied to plaintiff's brother requesting a loan of that amount and stating that she had settled with the plaintiff upon that basis. The brother being unable to advance the loan personally, went with her to a lawyer's office in Jersey City, to whom she made known the terms of her agreement with the plaintiff, and offered to secure the loan of the required money by a mortgage upon her property. The lawyer agreed to procure the loan and drew the bond and mortgage to secure its payment, but the defendant failed to execute them. Subsequent to this the defendant informed another brother of the plaintiff of the existence of her agreement to pay the $500, and requested him to lend her the money. The money was not procured and this action was brought to recover it.

The defendant denied the indebtedness, and also denied the making of the agreement to pay $500, and this *status* created

an issue of fact which the trial court submitted to the jury and upon which they found for the plaintiff for the amount claimed.

The defendant's counsel, upon a motion to nonsuit, insisted that the alleged promise of the defendant to convey her property was made anterior to six years, and that the promise to pay $500 did not prevent the operation of the statute of limitations, because it was not in writing and therefore not in compliance with section 10 of that act. *Gen. Stat., p.* 1976, § 17.

The court was also requested to charge substantially the same proposition in detailed form at the end of the case, and the court's refusal in each instance is made the basis for the bill of exceptions here presented.

The case was presented to the jury by the trial court upon the simple issue of fact, whether the defendant made the agreement sued upon, with instructions that if such an agreement had been made it was binding upon her, and in this we think the trial court was correct.

The plaintiff's case was not based upon the defendant's failure to carry out her original contract to convey her property to plaintiff, and allow him in the interim to receive and retain her rents, and the relevancy of that feature of the case was important in this issue only so far as its existence furnished *quid pro quo* for the agreement sued upon. The correct conception of the case presents an entirely new agreement, entered into between the parties, in substitution for the previous agreement; and this, upon well-settled legal principles, constituted a novation, to which the statute of limitations has no application under the facts of this case.

The effect of the testimony in favor of the plaintiff led to the conclusion that the parties recognized an existing legal obligation, disputable in amount, which would require both computation, delay, and, perhaps, protracted discussion *pro* and *con* to reduce to a financial certainty; that they met and settled their differences by adjusting the indebtedness of one to the other at the sum of $500, which the debtor then and there agreed to pay, and took steps at once to make her agree-

ment effectual. This agreement, in legal parlance, became novated or substituted for the prior arrangement between the parties, and the statute of limitations commenced to run only from the inception of the agreement.

A comparatively early case (*Taylor* v. *Hilary,* 1 *C. M. & R.* 741) formulated the principle, after a controversial era of subtle discussion in the Exchequer Chamber and the House of Lords, as to the necessity for an express consideration to support a bilateral contract, based only upon mutual promises, that "before the breach of the first agreement a new agreement is entered into, varying the contract in an essential part. The latter, then, is a substituted contract, and is an answer to an action upon the former." Commenting upon this deliverance, a modern writer of distinction says: "The result of the matter is that while the simple executory accord is nugatory, what we call a double executory accord is good. As long as there are mutual obligations, those obligations by mutual consent can be abrogated or changed, or new obligations can be substituted in their place. Where there are mutual executory obligations, the agreement to annul on one side is said to be supported by the consideration of the agreement to annul on the other. To use the popular formula, the mutual promises are consideration for each other." 2 *Str. Leg. Liab.* 127.

The same conclusion is reached in 29 *Cyc.* 1133, wherein it is stated, upon the strength of a number of cited cases, "A novation, like other valid contracts, must be supported by a consideration which in this case is the discharge of the original debt." And again: "Novation may take place by the substitution of a new obligation between the same parties with intent to extinguish the old obligation. The question is always one of intention." 29 *Cyc.* 1134, and cases.

Many concrete illustrations of the application of this doctrine are afforded by the adjudications in other jurisdictions, where it is quite unanimously held that when damages are unliquidated a fair settlement and compromise of a claim which has some legal merit, though less in amount than was claimed, is favored by the courts if intended to be final, upon

the principle doubtless, *interest reipublicae ut sit finis litium.* *Specialty Glass Co.* v. *Daley,* 172 *Mass.* 460; *Moorhouse* v. *Second National Bank,* 98 *N. Y.* 503; *Stoney Creek Woolen Co.* v. *Smalley,* 111 *Mich.* 321; *Chetwood* v. *California National Bank,* 113 *Cal.* 649; *Schleicher* v. *Vogel,* 16 *Dick. Ch. Rep.* 158; *Lattimore* v. *Haisen,* 14 *Johns.* (*N. Y.*) 330; *Rogers* v. *Rogers,* 139 *Mass.* 440; *Connelly* v. *Devoe,* 37 *Conn.* 570.

The maxim of procedure is, *"Novatio non praesumitur,"* and, therefore, whether such an agreement was actually entered into between the parties, so as to bring this case within the doctrine referred to, is a question of fact for the jury where the facts are in dispute; and hence, in this instance, the question was properly submitted to the jury whether or not a debt has been novated is ordinarily a question of fact and depends entirely upon the intention of the parties. Where there is no doubt as to the terms of the agreement it is a question of law. But if the terms of the agreement are equivocal or uncertain, then it becomes a question of fact for the jury under suitable instructions. 29 *Cyc.* 1140, and cases.

The judgment is affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, SWAYZE, REED, TRENCHARD, BERGEN, VOORHEES, MINTURN, BOGERT, VREDENBURGH, DILL, JJ.   12.

*For reversal*—PARKER, VROOM, GRAY, CONGDON, JJ.   4.