BRIGGS & TURIVAS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 11672.   Promulgated March 20, 1928.

*Albert L. Hopkins, Esq.*, and *Harry B. Sutter, Esq.*, for the petitioner.

*J. Harry Byrne, Esq.*, for the respondent.

64

OPINION.

Marquette: After carefully considering the facts of this case we reach the conclusion that the original contract between the petitioner and the Central Steel Co. calling for the delivery and acceptance of 50,000 tons of metal scrap, was breached by the Central Steel Co. in July, 1920, after about 35,000 tons had been delivered. Upon the breach of the contract there arose a right of action by the petitioner against the Steel Company. It is true the petitioner did not choose to avail itself of that right, but bent its efforts toward inducing the Steel Company to fulfill its obligations under the contract. These efforts, which culminated in the conference at Massillon on December 27, were unavailing.

The respondent takes the position that a novation took place at the time of the conference on December 27, 1920, or at least before the end of that month. We agree that there was a novation but not with the contention that it occurred in 1920. A novation is a new contract which substitutes a new obligation for the old one, and which, by the intention of the parties, extinguishes the old obligation, and like any other contract it must be supported by good and sufficient consideration. The new contract, when executed, takes the place of the old contract and thereafter it, and not the old contract, is controlling upon the parties. *Morecraft* v. *Allen*, 78 N. J. L. 729; 75 Atl. 920; 1915B L. R. A. 1.

In the present appeal the facts show that the new contract did not come into existence until 1921. While the matters embodied in it were doubtless discussed at the conference on December 27, no agreement was then reached. The conference ended with nothing

decided upon, nothing agreed to, no offers accepted. On January 5, 1921, the petitioner in Chicago received a written offer by mail and this offer was accepted on January 6. Then, and not until then, did the new contract come into existence. It provided for a price of $8 less per ton for the scrap metal then ordered than had been the price under the old contract, and it carried an advance payment in the form of trade acceptances. The rights and obligations of the parties were fixed by its terms and they became effective and binding on January 6, 1921, and not before. We are therefore of the opinion that the respondent was in error in including in the petitioner's income for 1920 the amount of trade acceptances which it received pursuant to and by virtue of the new contract.

The parties hereto have stipulated that the petitioner is entitled to deduct on account of commissions paid, the amount of $13,532.20 in computing its net income for 1919, and $3,608.30 in computing its net income for 1920, and adjustment should be made accordingly.

Reviewed by the Board.

*Judgment will be entered on 15 days' notice, under Rule 50.*