BIANCO, J.T.C.
Pursuant to the provisions set forth in N.J.S.A. 46:15-7.4, plaintiff, Chicago Five Portfolio, LLC, (hereinafter “Chicago Five”), seeks a refund of $174,000 paid pursuant to N.J.S.A. 46:15-7.2 (commonly referred to as “the Mansion Tax”) as part of the realty transfer fees[1] on its purchase of Class 4A commercial property[2] located at 550 Main Street, Fort Lee, New Jersey (hereinafter “the Property”). Defendant, Director of the New Jersey Division of Taxation (hereinafter “the Director”), asserts that a refund of the Mansion Tax is not warranted since the contract for the purchase of the Property was not “fully executed before July 1, 2006” within the intent and meaning of N.J.S.A. 46:15-7.4. Both parties have moved for summary judgment. For the reasons set forth in this opinion, Chicago Five’s motion is granted, and the Director’s motion is denied.
The facts are not in dispute:
On June 12, 2006 Storage Specialists, LLC (hereinafter “SSL”) entered into a Purchase Agreement with “ECS-FT. Lee, LLC” (hereinafter “ECS”) to buy the Property. As an agent of Babcock & Brown Storage Facilities, LLC and Babcock & Brown, LP, SSL identifies and purchases storage facilities. Typically, SSL assigns its rights under agreements to purchase storage facilities to Chicago Five.[3] Pursuant to the Purchase Agreement, SSL agreed to purchase the Property for $18,155,000. The Purchase Agreement further required SSL to make an additional deposit of $363,100, and provided SSL with a right to assign the Property without ECS’s approval.
On July 12, 2006, SSL and ECS amended the Purchase Agreement (hereinafter “the Amendment”). Pursuant to the Amend *347 ment, the purchase price of the Property was reduced to $17,400,000, a reduction of $755,000. Furthermore, under the terms of the Amendment, the deposit was increased to $463,100, an increase of $100,000. Finally, the Amendment expanded the time in which SSL could unilaterally terminate the Purchase Agreement, but limited the grounds for termination.
On August 16, 2006, ECS transferred title of the property to Chicago Five.[4] The deed to the property was recorded by the Bergen County Clerk on August 22, 2006. At that time, Chicago Five paid the realty transfer fees, which included the Mansion Tax in the amount of $174,000. On cross-motions for summary judgment, Chicago Five now seeks, and the Director opposes, the refund of the $174,000.
Summary Judgment.
The Court finds, and both parties agree, that the present matter is ripe for summary judgment. New Jersey’s Court Rules provide that summary judgment is appropriate where:
The judgment or order sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.
[ñ. 4:46-2(e).]
The moving party sustains the burden to show no genuine issue of material fact exists. Judson v. Peoples Bank and Trust Co., 17 N.J. 67, 74, 110 A.2d 24 (1954). See also Liberty Surplus Ins. Corp. v. Nowell Amoroso, P.A, 189 N.J. 436, 916 A.2d 440 (2007). The opposing party cannot defeat the motion for summary judgment simply by pointing to any fact in dispute. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 529, 666 A.2d 146 (1995). Denial of summary judgment occurs when the opposing party brings forward evidence that creates a genuine issue for a material fact. Ibid.
*348 The court finds that there is no genuine issue as to any material fact in this matter.
Analysis.
The Mansion Tax, when applicable, is payable by the purchaser “[i]n addition to all other fees imposed under P.L.1968, c. 49 (C.46:15-5 et seq.)” N.J.S.A 46:15-7.2(a). The Mansion Tax is equal to one percent of the entire consideration for. the purchase of certain types of real property where the purchase price exceeds $1,000,000. Ibid. Originally, the Mansion Tax applied only to (1) transfers of real property classified pursuant to the requirements of N.J.A.C. 18:12-2.2 as either (a) Class 2 residential, or (b) Class 3A farm property that included a building or structure for residential use, “including any other real property, regardless of class, that is effectively transferred to the same grantee in conjunction with the [qualified Class A farm property],” and (2) to transfers of cooperative units “as defined in section 3 of P.L.1987, c. 381 (C.46:8D-3).” N.J.S.A. 46:15-7.2 amended by N.J.S.A. 46:15-7.2 (2006).
N.J.S.A. 46:15-7.2 was amended in 2006 to expand the applicability of the Mansion Tax to transfers of commercial properties classified as Class 4A pursuant to the requirements of N.J.A.C. 18:12-2.2. N.J.S.A 46:15-7.2(a)(4). However, the 2006 amendment also included a new provision (P.L. 2006, c. 66) which provided for the refund of the Mansion Tax on sales of Class 4A commercial properties so long as certain listed events occurred by certain specified dates:
Notwithstanding the provisions of section 8 of P.L.2004, c. 66 (0.46:15-7.2), for the transfer of real property that was classified pursuant to the requirements of N.J.A.C. 18:12-2.2 as Class 4A “commercial properties” at the time of the recording of the deed, provided that the deed was recorded on or before November 15, 2006, and that was transferred pursuant to a contract that was fully executed before July 1,2006, the fee imposed pursuant to section 8 of P.L.2004, c. 66 shall be refunded to the grantee by the filing, within one year following the date of the recording of the deed, of a claim with the New Jersey Division of Taxation for a refund of the fee paid. Proof of claim for refund shall be made by the submission of such documentation as the Director of the Division of Taxation may require. [N.J.S.A. 46:15-7.4.]
In summary, N.J.SA 46:15-7.4 allows for a refund of the Mansion Tax on sales of Class 4A commercial properties provided *349 three conditions are met: (1) the contract must be fully executed prior to July 1, 2006; (2) the deed must be recorded on or before November 15, 2006; and (3) the refund claim must be filed within one year from the deed’s recording. The Director concedes that Chicago Five has met the last two conditions. Accordingly, the sole issue before this court is whether the Purchase Agreement was fully executed within the meaning of N.J.S.A. 46:15-7.4 before July 1, 2006.
The Tax Court initially addressed this issue in Wells Reit II-80 Park Plaza, LLC v. Director, Div. of Taxation, 24 N.J.Tax 98 (Tax 2008).[5] In Wells Reit, the court determined that:
In enacting the mansion tax as a revenue-raising measure for the general State purposes, the Legislature carved out, in N.J.S.A. 46:lo-7.4, a limited exclusion from the tax for certain transactions. I construe that exclusion as being equivalent to an exemption from the tax which should be construed narrowly. Therefore, I interpret the phrase “fully executed before July 1, 2006” as referring to a contract signed on or before June 30, 2006, none of the essential terms of which was amended in a material respect on or after July 1, 2006.
LId. at 103-04.]
Applying this standard to a change in the contract price, the court in Wells Reit concluded that, “the price reduction constituted a material change to an essential term of the Agreement. As a result, the Agreement was not ‘fully executed’ within the meaning of N.J.S.A 46:15-7.4 before July 1, 2006.” Id. at 104.
This court must respectfully disagree with the standard applied in Wells Reit for determining whether a Mansion Tax refund is warranted. [6] In this court’s view, interpreting the contract phrase fully executed based upon the narrow standard established for tax exemptions, was never contemplated by the Legislature in its adoption of N.J.S.A. 46:15-7.4. To determine whether the taxpayer was entitled to a refund of the Mansion Tax, the court in Wells Reit inter-mingled the narrow tax exemption standard with an abbreviated contract analysis focused solely on a change to an *350 essential term of a contract. Such a limited analysis, in the opinion of this court, is unsupported and excludes consideration of several other factors (discussed infra) required under contract law to determine the legal effect of contract changes.
This court finds that N.J.S.A. 46:15-7.4 concerns the initial application of the Mansion Tax and not an exemption or exclusion from taxation. “[T]he term ‘exemption’ does not mean every exclusion from the reach of a levy, but rather exclusions of ‘property, persons, [or] transactions ... which are logically within the tax base.’” Department of Revenue v. ACF Indus. Inc., 510 U.S. 332, 347, 114 S.Ct. 843, 851, 127 L.Ed.2d 165, 177-78 (1994) (citing Jerome R. Hellerstein & Walter Hellerstein, State and Local Taxation 973 (5th ed.1988)) (emphasis added). Sales of Class 4A commercial properties that meet the refund requirements of N.J.S.A. 46:15-7.4, in this court’s view, are not logically “within the tax base” of the Mansion Tax.
An ambiguous statutory term must be read in accordance with “the legislative plan as it may be gathered from the enactment ‘when read in full light of its history, purpose and context.’ ” State v. Haliski, 140 N.J. 1, 9, 656 A.2d 1246 (1995) (quoting State v. Gill, 47 N.J. 441, 444, 221 A.2d 521 (1966)). It is well settled that when “interpretation of a taxing provision is in doubt, and there is no legislative history that dispels that doubt, the court should construe the statute in favor of the taxpayer.” Fedders Fin. Corp. v. Director, Div. of Taxation, 96 N.J. 376, 385, 476 A.2d 741 (1984). The Fedders court went on to say that:
In the interpretation of statutes levying taxes it is the established rule not to extend their provisions, by implication, beyond the clear import of the language used, or to enlarge their operations so as to embrace matters not specifically pointed out. In ease of doubt they are construed most strongly against the government, and in favor of the citizen.
[Ibid, (citations omitted).]
The Statement of the Assembly Budget Committee to the Committee Substitute for A4701 (the Bill enacted as P.L.2006, c. 33) provides some insight:
The bill applies to deed and non-deed transfers occurring on and after August 1, 2006; however, special provisions are made for transactions that were “under *351 contract” before July 1, 2006 and for which the transaction was recorded by November 15, 2006 so that, in the case of a deed transaction, the fee will be refunded after recording and in the case of a non-deed transaction no tax will be due.
[Assembly Budget Committee Statement to Assembly Committee substitute for A4701, July 7, 2006; Senate Budget and Appropriations Committee Statement to S1982, July 7,2006.] (emphasis added).
The Statement of the Senate Budget and Appropriations Committee to S1982, the companion bill to A4701 contains virtually identical language to the Assembly Budget Committee Statement. It is compelling to this court that neither the statute (N.J.S.A. 46:15-7.4) nor the Committee Statements make any reference, express or implied, to tax exemptions or tax exclusions.
The court in Wells Reit, supra, found that “the meaning of the phrase ‘under contract’ used in the Committee Statements is no more apparent than is the meaning of the phrase ‘fully executed’ as set forth in the statute.” 24 N. J.Tax at 102-03. However, this court acknowledges that the phrases fully executed and 'tinder contract, while not precisely defined by statute or case law, are nevertheless terms of art that have long been associated with real estate sales contracts.
The term executed contract had been defined as a “[cjontract which has been fully performed by the parties. If performed in part, it is partially executed (executory); if entirely performed, it is fully or' ivholly executed.” Blacks Law Dictionary 567 (6th ed. 1990) (emphasis added). More recently the term executed contract is defined not only as “[a] contract that has been fully performed by both parties”, but also as “[a] signed contract.” Blacks Law Dictionary 321 (7th ed. 1999); Blacks Law Dictionary (8th ed. 2004), available at 2004 WL Blacks (emphasis added). See also The Law Dictionary, (2002 ed.) (defining the term executed contract as “a contract that has fully adhered to the rights, obligations and formalities of the agreement. Leaving no matters undone or incomplete.... Additionally, an executed contract also means that signatures, attestation requirements and appropriate filing have been fully completed, leaving no question as to the qualify of the contract’s formation.”) (emphasis added).
*352 In A Treatise on the Law of Contracts, Professor Williston observes that:
Technically speaking, if a transaction is fully executed on both sides, it is not properly described as a contract. In lay terminology, however, the term executed contract is often used to describe completely executed consensual agreements, such as sales completely carried out on both sides or wholly executed conveyances. The same term is also often loosely used to describe unilateral contracts which are executed only on one side, such as sales where the goods have been delivered but the price has not yet been paid. Legally, however, since the term contract is defined in terms of promise, requiring that something be done in the future, there can be no such thing as an executed contract. By the same token, the phrase executory contract is misleading; all contracts, by definition, are executory. When they cease to be so, they cease to be contracts at all.
[1 Williston on Contracts § 1:19 (Lord ed. 1990) (footnote omitted).]
Consistent with one usage of the phrase executed contract as currently defined in legal dictionaries cited above, the phrase fully executed as it relates to a contract for the sale of real estate has been defined to mean that all parties have signed a contract.1 *****[7] This definition is not based upon the performance of the parties. Rather, it is based more on general custom and usage than on sound legal theory. In the court’s view, the use of the phase fully executed in this fashion is equally consistent with Williston’s discussion of executed and executory contracts set forth above. Williston acknowledged, as now does this court, that the term executed contract, rightly or wrongly, is sometimes used to describe contracts which are in fact executory.
*353 The phrase -under contract generally refers to the time period from the signing of the contract to the closing of title (or termination), where the parties and the subject property are bound by contract.[8] Taking the phrases fully executed and under contract- together, as respectively used in N.J.S.A. 46:15-7.4 and its Committee Statements, the court concludes that the Legislature intended to refund the Mansion Tax on those sales of Class 4A commercial properties that were subject to the terms of a binding contract before July 1, 2006, if the sale closed and the deed was recorded by November 15, 2006.
The Legislature has given no indication that the phrase fully executed should be interpreted in any other fashion than its plain meaning and common usage in the real estate contract realm. The same is true with regard to the Committees’ use of the phrase ■under contract. The fact that contract phraseology was incorporated in both N.J.S.A. 46:15-7.4 and in the Committee Statements suggests to this court that the analysis with regard to the refund of the Mansion Tax was intended to be rooted in contract law. Accordingly, a complete analysis under contract law is appropriate in determining whether a contract is fully executed within the intent and meaning of N.J.S.A. 46:15-7.4.
In the present matter, under the terms of the Purchase Agreement, ECS agreed to sell, and SSL agreed to buy the Property for $18,155,000, with a required deposit of $363,100. The Amendment reduced the purchase price by $755,000 (a 4.16% reduction), increased the deposit by $100,000 (a 27.54% increase), and expanded SSL’s time to terminate the Purchase Agreement while limiting the circumstances. The court must determine *354 whether the changes to the Purchase Agreement brought about by the Amendment constitute a modification or a novation of that agreement. The court concludes that the Amendment constituted a modification of the Purchase Agreement and therefore, a refund of the Mansion Tax paid by Chicago Five is warranted.
A contract must be sufficiently definite so that the parties bound by its terms can perform their tasks with reasonable certainty. Weichert Co. Realtors v. Ryan, 128 N.J. 427, 435, 608 A.2d 280 (1992). It has been held that “parties to an existing contract may, by mutual assent, modify it.” County of Morris v. Fauver, 153 N.J. 80, 99, 707 A.2d 958 (1998) (citations omitted). Additionally, “limited changes or amendments to a contract can be accomplished through modification.” Ibid. Modification does not extinguish an existing fully executed contract. Rather,
[a] modification of a contract is a change in one or more respects which introduces new elements into the details of the contract and cancels others but leaves the general purpose and effect undisturbed.
[International Bus. Lists, Inc. v. AT & T Co., 147 F.3d 636, 641 (7th Cir.1998).]
“Amendment or alteration, whether major or minor, connote survival and continuation to a greater or lesser degree of the original subject matter.” In re Hoffman Bros. Packing Co., Inc. 173 B.R. 177, 183 (9th Cir. BAP 1994).
A novation, in contrast, is the substitution of a new contract for an old one. Fusco v. City of Union City, 261 N.J.Super. 332, 336, 618 A.2d 914 (App.Div.1993) (citing 15 Williston on Contracts, § 1865 (3d ed. 1972)). Four elements must be met to create a novation:
(1) the existence of a previously valid contract; (2) the agreement to make a new contract; (3) the intent to extinguish the original contractual obligation; and (4) the validity of the new contract.
[In re Timberline Prop. Dev., Inc., 115 B.R. 787, 790 (Bankr.D.N.J.1990) (citing S.N.W. Corp. v. Hauser, 461 So.2d 188, 189 (Fla.Dist.Ct.App.1984), rev. den. 471 So.2d 43 (Fla.1985)) ].
The first element of novation is met under the present facts as there is no dispute and the court accepts that the Purchase Agreement was a previously valid contract. The second element of novation has also been met since the signing of the Amendment clearly demonstrates the parties’ intent to be bound by its terms. *355 The fourth element of novation has been satisfied as well since the validity of the Amendment has not been challenged. Furthermore, the Amendment is binding and contains all the components of a contract—offer, acceptance, and consideration.
With regard to the third element of novation, Chicago Five argues that the Purchase Agreement was fully executed on June 12, 2006, and remained so after the Amendment since the subsequent changes, including the reduction of the purchase price by $755,000, were merely modifications. The Director contends, however, that the Amendment brought about a novation of the Purchase Agreement as of July 12, 2006 since the Amendment changed the purchase price and the deposit amount, as well as changed the termination provision.
The court in Timberline found that lowering purchase price shows:
intent to extinguish the original obligation. The buyers, no doubt, wanted the revised purchase price over the original, higher price ... Thus, there appears to have been an agreement to make the new contract.
[Id. at 790].
However, the court in Timberline also cited two additional changes it considered to be material. First, because bankruptcy was filed, any change in the contract would require approval of the Bankruptcy Court. The court considered this change material because
[e]learly, the requirement of court approval of the contracts adds an element which did not exist prior to the filing of the petition. There is no requirement that a third party approve a normal contract. Under 11 D.S.C. § 363, however, the court must approve the sale of debtor’s property if it is out of the ordinary course of business. Court approval adds an element to the determination, for the court must specifically find that such a sale is in the interest of creditors, is entered into in good faith, and is one in which the price represents fair value.
[Ibid, (citing In re Abbotts Dairies of Pa., Inc., 788 F.2d 143 (3rd Cir.1986)).]
Second, the contract seller in Timberline became a debtor-in-possession. The court reasoned that, “while there a great similarity between a pre-petition debtor and a debtor-in-possession, they are, in fact, different entities for the purpose of assuming contracts.” Ibid, (citing In re West Elecs., Inc., 852 F.2d 79 (3d Cir.1988)). The Timberline court held that the combined changes constituted a novation because they collectively demonstrated *356 intent to extinguish the original contractual obligation. The conclusion in Timberlme is distinguishable under the present facts.
While the purchase price is considered to be an “essential element[ ] of a contract for the sale of land,” McEnaney v. Spedick, 13 N.J.Super. 37, 40, 80 A.2d 237 (App.Div.1951), every change in price does not per se result in a novation. New Jersey has long established that
|i]n order to effect a novation there must be a clear and definite intention on the pait of all concerned that such is the purpose of the agreement, for it is a well settled principle that novation is never to be presumed.
[The Sixteenth Ward Bldg. & Loan Ass’n v. Reliable Loan, 125 N.J. Eq. 340, 342-43, 5 A.2d 753 (E. & A.1939) (emphasis added).]
Still, “[t]he existence of such an intention need not be shown by express words ... but the same may be implied from the facts and circumstances attending the transaction and the conduct of the parties thereafter.” Id. at 343, 5 A2d 753 (citation omitted).
Under the present facts, the court is hard pressed to find “a clear and definite intention” of the parties (either by express words, the circumstances attending the transaction, or the conduct of the parties) “to effect a novation.” Id. at 342-43, 5 A.2d 753. When construing the meaning of a contract the first and best place to determine the intent of the parties is from the written terms of the document at issue, Kennedy v. Westinghouse Elec. Corp., 29 N.J.Super. 68, 76, 101 A.2d 592 (App.Div.1953), and not, in this court’s view, from the assertions of an interested non party, offering its version of what the actual parties intended.
In addition to the changes outlined above, the Amendment also contained a provision providing that “[e]xeept as modified herein, all terms and conditions of the Purchase Agreement shall remain in full force and effect.” Such language, when combined with the attending circumstances of the Amendment, evidences the parties’ intent to modify and not extinguish their original contractual obligations under the Purchase Agreement.
Nothing contained in the Amendment alters the general purpose of the Purchase Agreement, which was for conveyance and acquisition of the Property. Rather, the Amendment simply “introduces new elements into the details of the [Purchase Agree *357 ment] ... but leaves the general purpose and effect undisturbed,” International Bus. Lists, Inc., supra, 147 F.3d at 641, and “connotéis] survival and continuation to a greater or lesser degree of the original subject matter.” In re Hoffman Bros. Packing Co., Inc., supra, 173 B.R. at 183.
It should be noted that had this court adopted the standard applied in Wells Reit, supra, the outcome in this matter would be different. Pursuant to a Wells Reit analysis, since price is an essential contract term, the change in the purchase price alone would have been sufficient to conclude that no contract had been fully executed before July 1, 2006.
The court finds that the Amendment constituted a modification, and not a novation of the Purchase Agreement. Accordingly, the Purchase Agreement was fully executed before July 1, 2006, within the intent and meaning of N.J.S.A. 46:15-7.4. Summary judgment is therefore granted in favor of Chicago Five for a refund of the Mansion Tax paid in conjunction with its purchase of the Property. The Director’s motion for summary judgment is denied. The Tax Court Administrator/Clerk is directed to enter judgment consistent with this opinion.

 See generally NJ.S.A. 46:15-7 to -7.4.

 See requirements of Class 4A commercial property at NJ.A.C. 18:12-2.2.

 Both parties indicate that Chicago Five is a single purpose entity wholly owned by Babcock, but do not specify which one or both of the Babcock entities is/are the owner(s).

 On August 14, 2006, SSL transferred its rights under the Purchase Agreement to Chicago Five.

 Now on appeal to the Appellate Division under Docket No. A5276-07T3.

 The same standard was followed by the court in SCI ITC South Fund, LLC v. Director, Div. of Taxation, 24 N.J.Tax 205 (Tax 2008).

 See Mortgage la, http://mortgagela.coin/2fullyexeciitedcoiitract.php, (last visited October 10, 2008) {‘‘Fully Executed Contract of Sale: A written document in which the purchaser agrees to buy certain real estate or personal property and the seller agrees to sell under stated conditions, which has been signed by all parties involved and notarized if required.") (emphasis added). See also Advantge: Buyer Realty http:Hmmv.advantagebuyer.com/huyer.html, (last visited October 10, 2008) ("[A] fully executed contract (a contract signed by both you and the seller) ...”.) (emphasis added). See also The University at Texas at Austin, http://mmv.utexas.edu/busiuess/vp/contracts-agreements/contract-faq.html, (last visited October 10, 2008) ("Fully Executed means that all parties have agreed to the terms and conditions of the contract and any revisions thereto, and they have signed and initialed the written contract.") (emphasis added). See also University of Minnesota Real Estate Office, http:llmmv.realestate.unm.edu/REO Definitions.htm, (last visited October 10, 2008) ("A contract has been fully-executed when all parties have initialed (if necessary) and signed the contract.") (emphasis added).

 Real Estate Webmasters, httpd/viWw.realestatewebmasters.coni/g/ossarylU/ Under-Contract, (last visited Oct. 13, 2008) ("Definitions of Under Contract [-] Home has a [sic| acceptable purchase agreement placed on it and the home awaits final inspections and the settlement or closing process."). See also Connecticut Shoreline Real Estate, http.I/harriet2.wordpress.conil2007/10l06/ what-does-under-contract-mean/, (last visited Oct. 13, 2008) ("fl]f a property is ‘under contract,' it can mean everything is done and the only remaining step is to close. OR it can mean an offer was accepted by the seller 10 minutes ago and many contingencies remain to be resolved.").