999 A.2d 489 (2010)
414 N.J. Super. 453
WELLS REIT II80 PARK PLAZA, LLC, Plaintiff-Appellant,
v.
DIRECTOR, DIVISION OF TAXATION, Defendant-Respondent.
Chicago Five Portfolio, LLC, Plaintiff-Respondent,
v.
Director, Division of Taxation, Defendant-Appellant.
DOCKET NO. A-5276-07T3, A-3381-08T3.
Superior Court of New Jersey, Appellate Division.
Argued March 8, 2010.
Decided July 28, 2010.
*491 Joseph A. Boyle argued the cause for appellant Wells Reit-80 Park Plaza, LLC, in A-5276-07T3 (Kelley Drye & Warren, attorneys; Mr. Boyle and Vincent P. Rao, II, Parsippany, on the briefs).
Heather Lynn Anderson, Deputy Attorney General, argued the cause for appellant in A-3381-08T3 and respondent in A-5276-07T3 (Paula T. Dow, Attorney General, attorney; Lewis A. Scheindlin, Assistant Attorney General, of counsel; Ms. Anderson, on the briefs).
Robert L. Selvers, Woodbridge, argued the cause for respondent Chicago Five Portfolio, Inc. in A-3381-08T3 (Wilentz, Goldman & Spitzer, attorneys; Mr. Selvers, on the brief).
Before Judges RODRÍGUEZ, REISNER and CHAMBERS.
The opinion of the court was delivered by A.A. RODRÍGUEZ, P.J.A.D.
In this opinion, we address conflicting Tax Court decisions regarding a 2006 legislative amendment[1] to New Jersey's realty transfer fee on property purchases over $1,000,000, also known as the "Mansion Tax," N.J.S.A. 46:15-7.2. This amendment, codified as N.J.S.A. 46:15-7.4, provides a refund of the Mansion Tax to contracts for commercial properties that were "fully executed before July 1, 2006," provided that the deed was transferred on or before November 15, 2006. We address both appeals in one opinion. The source of the dispute is that two Tax Court judges came to different interpretations of the phrase "fully executed before July 1, 2006." We hold that: (1) N.J.S.A. 46:15-7.4 is not an "exemption" from the Mansion Tax, but rather a refund provision; (2) as such, the section should be construed in favor of the taxpayer; and (3) the plain meaning and common usage of the phrase "fully executed before July 1, *492 2006" means a real estate contract that is signed and binding upon the parties before July 1, 2006, whether or not there are subsequent amendments to the terms.
The statutory section at issue here provides:
[F]or the transfer of real property that was classified pursuant to the requirements of N.J.A.C. 18:12-2.2 as Class 4A "commercial properties" at the time of the recording of the deed, provided that the deed was recorded on or before November 15, 2006, and that was transferred pursuant to a contract that was fully executed before July 1, 2006, the fee imposed pursuant to section 8 of [L.] 2004, c. 66 shall be refunded to the grantee by the filing, within one year following the date of the recording of the deed, of a claim with the New Jersey Division of Taxation for a refund of the fee paid. Proof of claim for refund shall be made by the submission of such documentation as the Director of the Division of Taxation may require. [N.J.S.A. 46:15-7.4.]

Wells Reit II80 Park Plaza, LLC (Wells Reit)
On June 13, 2006, Wells Reit's assignor entered into a contract with Newark Urban Renewal Investors, L.P., (Newark Urban) to purchase property located at Park Place in Newark for $155,000,000. All parties signed the contract on that date. The contract included a "due diligence period," which was to end on June 21, 2006. The parties subsequently agreed to seven contract amendments, each referring to June 13, 2006, as the date the contract was formed. A July 25, 2006 amendment reduced the price to $147,500,000.
On September 21, 2006, the purchaser assigned the contract to Wells Reit and the parties closed on the sale. Wells Reit paid a $1,475,000 realty transfer fee set by N.J.S.A. 46:15-7.2 and recorded the deed. Wells Reit subsequently filed an RTF-3 Claim for Refund of the realty transfer fee with the Division of Taxation. The Division denied Wells Reit's claim for the following reasons:
Your claim contained a contracted sale-purchase agreement . . . for a purchase price of $155,000,000. The sale agreement had several amendments and the July 25, 2006 [amendment] set the purchase price at $147,500,000 to reflect the consideration amount on the deed. Although the deed was recorded before the November 15, 2006 deadline as mandated by [L. 2006, c. 33] [the Division] must deny your claim because the contract sale was not fully executed on July 1, 2006[,] as provided by statute.
Wells Reit appealed this decision and filed a complaint against the Director, Division of Taxation (Director) in the Tax Court.
After both parties moved for summary judgment, the judge granted summary judgment in favor of the Director. The judge concluded that "[i]n enacting the [M]ansion [T]ax as a revenue-raising measure for general State purposes, the Legislature carved out, in N.J.S.A. 46:15-7.4, a limited exclusion from the tax for certain transactions." Wells Reit II80 Park Plaza, LLC v. Dir., Div. of Tax'n, 24 N.J.Tax 98, 103 (Tax 2008). The judge found that N.J.S.A. 46:15-7.4 was "equivalent to an exemption from the tax[,] which should be construed narrowly." Ibid. Therefore, the judge construed "the phrase `fully executed before July 1, 2006' as referring to a contract signed on or before June 30, 2006, none of the essential terms of which was amended in a material respect on or after July 1, 2006." Id. at 103-04. Therefore, the Director's motion for summary judgment was granted, Wells Reit's motion was denied, and the complaint was dismissed. Id. at 104. Wells Reit appealed.

*493 Chicago Five Portfolio, Inc. (Chicago Five)

On June 12, 2006, Chicago Five's assignor agreed to purchase property in Fort Lee for $18,155,000 from ECS-FT. Lee, LLC. A month later, the parties agreed to lower the purchase price to $17,400,000 and added a new economic feasibility clause, which allowed the purchaser to terminate the contract if it concludes "that the acquisition of the property is not economically feasible . . . prior to the expiration of the due diligence period." In August 2006, the purchaser assigned its rights to Chicago Five. The transaction closed on August 16, 2006.
Pursuant to N.J.S.A. 46:15-7.2, Chicago Five paid a realty transfer fee in the amount of $174,000 and subsequently filed an RTF-3 Claim for Refund of the realty transfer fee. The Division denied the claim, finding:
Your claim contained an Agreement of Sale from ECS-FT. Lee, LLC to Storage Specialists, LLC with a contracted sales price of $18,155,000. The assignment of purchase and sale agreement shows Storage Specialists, LLC as assigning over rights to Chicago Five Portfolio, LLC on August 14, 2006. The deed dated August 22, 2006[,] was transacted from ECS-FT. Lee, LLC to Chicago Five Portfolio, LLC with a stated consideration of $17,400,000. Therefore, [the Division] must deny your claim because the Agreement of Sale dated June 12, 2006 lists a buyer who is not the stated buyer in the deed.
Chicago Five appealed the decision and filed a complaint against the Director in the Tax Court. Both parties moved for summary judgment. Judge Vito L. Bianco granted summary judgment to Chicago Five. In his published decision, the judge wrote:
This court must respectively disagree with the standard applied in [Wells Reit, supra, 24 N.J.Tax 98,] for determining whether a Mansion Tax refund is warranted. In this court's view, interpreting the contract phrase ["]fully executed["] based upon the narrow standard established for tax exemptions was never contemplated by the Legislature in its adoption of N.J.S.A. 46:15-7.4. To determine whether the taxpayer was entitled to a refund of the Mansion Tax, the court in Wells Reit inter-mingled the narrow tax exemption standard with an abbreviated contract analysis focused solely on a change to an essential term of a contract.
[Chicago Five Portfolio, LLC v. Dir., Div. of Tax'n, 24 N.J.Tax 342, 349 (Tax 2008) (emphasis removed).]
Judge Bianco then engaged in statutory interpretation. Because the Legislature provided no definition of the term "fully executed," Judge Bianco consulted several dictionaries and legal treatises:
Consistent with one usage of the phrase ["]executed contract["] as currently defined in legal dictionaries . . . the phrase ["]fully executed["] as it relates to a contract for the sale of real estate has been defined to mean that all parties have signed a contract. This definition is not based upon the performance of the parties. Rather, it is based more on general custom and usage than on sound legal theory. . . .
The phrase ["]under contract["] refers to the time period from the signing of the contract to the closing of title (or termination), where the parties and the subject property are bound by contract. Taking the phrases ["]fully executed["] and ["]under contract["] together, as respectively used in N.J.S.A. 46:15-7.4 and its Committee Statements, the court concludes that the Legislature intended *494 to refund the Mansion Tax on those sales of Class 4A commercial properties that were subject to the terms of a binding contract before July 1, 2006, if the sale closed and the deed was recorded by November 15, 2006.
[Id. at 352-53 (emphasis removed).]
Judge Bianco found no "clear and definite intention" of the parties "to effect a novation," which would have created a new contract and extinguished the old one. Id. at 356. Rather, the contract amendment contained a provision expressly stating that all terms and conditions of the purchase agreement were to remain in full force and effect. He concluded that the amendment was a modification and not a novation, thus the purchase agreement was fully executed before July 1, 2006, as required by N.J.S.A. 46:15-7.4. He also found that N.J.S.A. 46:15-7.4 was not a tax exemption and should be construed in favor of the taxpayer. Thus, the judge granted summary judgment to Chicago Five. The Director appealed.

Contentions
Wells Reit raises the following arguments in A-5276-07T3:
THE TAX COURT COMMITTED REVERSIBLE ERROR IN NOT ACCORDING THE TERM "FULLY EXECUTED" ITS PLAIN MEANING AND REWRITING THE STATUTE. THE TAX COURT'S INTERPRETATION OF N.J.S.A. 46:15-7.4 AS CREATING AN "EXEMPTION" IS ERRONEOUS AND MANDATES REVERSAL OF THE ORDER WITH A DIRECTION TO ENTER JUDGMENT GRANTING WELLS ITS REFUND.
In its supplemental brief, Wells Reit also argues:
THE PROPER STANDARD OF REVIEW IS DE NOVO.
The Director raises the following arguments in A-3381-08T3:
THIS COURT SHOULD REVERSE THE TAX COURT'S RULING BECAUSE IT DOES NOT COMPORT WITH EITHER THE PURPOSE UNDERLYING THE REALTY TRANSFER FEE OR PRIOR CASES PROVIDING THAT A CONTRACT IS NOT "FULLY EXECUTED" UNTIL ALL MATERIAL MODIFICATIONS TO A CONTRACT ARE COMPLETE.
In a supplemental brief, the Director also argues:
THE RESPONDENT'S CONTRACT OF SALE WAS NOT "FULLY EXECUTED" BEFORE JULY 1, 2006, AS REQUIRED BY LAW, THUS THE TRANSFER FEE PAID BY RESPONDENT CANNOT BE REFUNDED.
Our review of the Director's decisions regarding the imposition of tax is "limited." Quest Diagnostics, Inc. v. Dir., Div. of Tax'n, 387 N.J.Super. 104, 109, 903 A.2d 442 (App.Div.), certif. denied, 188 N.J. 577, 911 A.2d 69 (2006). We recognize "the Director's expertise in the highly specialized and technical area of taxation," and thus the Director's interpretation of law will prevail unless it is "plainly unreasonable." Aetna Burglar & Fire Alarm Co. v. Dir., Div. of Tax'n, 16 N.J.Tax 584, 589 (Tax 1997) (citing Metromedia, Inc. v. Dir., Div. of Tax'n, 97 N.J. 313, 327, 478 A.2d 742 (1984)). However, the Director's interpretation will not be followed when the Director "extends a statute `to give it a greater effect than its language permits.'" Oberhand v. Dir., Div. of Tax'n, 193 N.J. 558, 568, 940 A.2d 1202 (2008) (quoting GE Solid State, Inc. v. Dir., Div. of Tax'n, 132 N.J. 298, 306, 625 A.2d 468 (1993)). Ultimately, statutory interpretation is primarily the role of the judiciary and is not an administrative function. Bd. of Educ. v. N.J. State Bd. of Educ., 372 N.J.Super. 341, 345-49, 858 A.2d 576 (App. *495 Div.2004) (citing Mayflower Sec. Co. v. Bureau of Sec., 64 N.J. 85, 93, 312 A.2d 497 (1973)).
We use the same summary judgment standard that is used by trial courts. Jolley v. Marquess, 393 N.J.Super. 255, 267, 923 A.2d 264 (App.Div.2007) (citing Prudential Prop. & Cas. Ins. Co. v. Boylan, 307 N.J.Super. 162, 167, 704 A.2d 597 (App.Div.), certif. denied, 154 N.J. 608, 713 A.2d 499 (1998)). Once we determine that no genuine issues of material fact exist, then we decide whether the trial court's application of the law was correct. Ibid. "A trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378, 658 A.2d 1230 (1995).
Here, there were no material facts in dispute and summary judgment was appropriate. The issue presented is purely legal. Thus, we owe no deference to either judge's statutory interpretation. De novo review is appropriate. H.J. Bailey Co. v. Neptune Twp., 399 N.J.Super. 381, 385, 944 A.2d 706 (2008).
In order to qualify for the refund of the Mansion Tax, the following requirements must be met: (1) the contract must be "fully executed" prior to July 1, 2006; (2) the deed must be recorded on or before November 15, 2006; and (3) the refund claim form must be filed with the Division within one year. N.J.S.A. 46:15-7.4. Here, all parties agreed that the second and third conditions were met. At issue is whether the contracts were "fully executed" prior to July 1, 2006. We find that both contracts were indeed "fully executed" prior to July 1, 2006.

Whether The Amendments Are Modifications Or Novations?
We begin our analysis with "[a] well-established canon of statutory interpretation. . . that the Legislature `is presumed to be aware of judicial construction of its enactments.'" Johnson v. Scaccetti, 192 N.J. 256, 276, 927 A.2d 1269 (2007) (quoting DiProspero v. Penn, 183 N.J. 477, 494, 874 A.2d 1039 (2005)).
When performing statutory interpretation, "a court must first look to the language of the statute itself." Macysyn v. Hensler, 329 N.J.Super. 476, 485, 748 A.2d 591 (App.Div.2000) (citing Kimmelman v. Henkels & McCoy Inc., 108 N.J. 123, 128, 527 A.2d 1368 (1987)). "Each word in the statute must be given its plain meaning; no word should be rendered inoperative or superfluous." Ibid. (citing Dempsey v. Mastropasqua, 242 N.J.Super. 234, 238, 576 A.2d 335 (App.Div.1990)). See also DiProspero, supra, 183 N.J. at 492, 874 A.2d 1039 ("We ascribe to the statutory words their ordinary meaning and significance. . . and read them in context with related provisions so as to give sense to the legislation as a whole[.]") (internal citations omitted). "If the plain language leads to a clear and unambiguous result, then [the court's] interpretive process is over." Richardson v. Bd. of Trs., Police & Firemen's Ret. Sys., 192 N.J. 189, 195, 927 A.2d 543 (2007) (citation omitted). It is not the court's function to "rewrite a plainly-written enactment of the Legislature []or presume that the Legislature intended something other than that expressed by way of the plain language." DiProspero, supra, 183 N.J. at 492, 874 A.2d 1039 (alteration in original) (citation omitted).
However, where a statute's language is ambiguous or leads to more than one interpretation, courts may turn to extrinsic evidence for guidance. Richardson, supra, 192 N.J. at 195-96, 927 A.2d 543. The court may consider "extrinsic factors, such as the statute's purpose, legislative history, *496 and statutory context to ascertain the legislature's intent." Twp. of Pennsauken v. Schad, 160 N.J. 156, 170, 733 A.2d 1159 (1999). It is also appropriate to look to dictionary definitions for determining the meaning of words. Macysyn, supra, 329 N.J.Super. at 485, 748 A.2d 591.
In Wells Reit, supra, 24 N.J.Tax at 104, the judge narrowly construed the phrase "fully executed before July 1, 2006" to mean "a contract signed on or before June 30, 2006, none of the essential terms of which was amended in a material respect on or after July 1, 2006." However, the judge provided no legal analysis to demonstrate how he came to this definition or how he determined which terms were "material."
N.J.S.A. 46:15-7.4 provides no definition for the term "fully executed." Statements by the legislative committees for Assembly Bill A.4701 (enacted as L. 2006, c. 33 and codified as N.J.S.A. 46:15-7.4) also do not define "fully executed," but do provide an explanation:
[S]pecial provisions are made for transactions that were "under contract" before July 1, 2006[,] and for which the transaction was recorded by November 15, 2006[,] so that, in the case of a deed transaction, the fee will be refunded after recording[,] and[,] in the case of a non-deed transaction[,] no tax will be due.
[Assembly Budget Committee Statement to Assembly Committee Substitute for A.4701, (July 7, 2006); Senate Budget and Appropriations Committee Statement to S.1982, (June 26, 2006) (emphasis added).]
As both judges below noted, "the meaning of the phrase `under contract' used in the Committee Statements is no more apparent than the meaning of the phrase `fully executed' as set forth in the statute." Chicago Five, supra, 24 N.J.Tax at 351 (quoting Wells Reit, supra, 24 N.J.Tax at 102-03). Therefore, this court must use extrinsic sources to determine the plain meaning and common usage of the phrases "fully executed" and "under contract."
The term "executed contract" can be defined as a contract that "has been fully performed by both parties." Black's Law Dictionary 321 (7th ed. 1999). The language of N.J.S.A. 46:15-7.4 conflicts with this definition. Logically, in order for a real estate contract to be "fully performed," the purchase price must be paid and the deed must be transferred. N.J.S.A. 46:15-7.4, however, requires the contract to be "fully executed" before July 1, 2006, but allows the deed to be transferred as late as November 15, 2006. Therefore, the "fully performed" definition of an "executed contract" cannot be applicable here.
The intended definition of "fully executed" is more likely "a signed contract." Black's Law Dictionary 321 (7th ed. 1999). An "executed" document is one "that has been signed." Id. at 589. See also William C. Burton, Legal Thesaurus 467 (1980) (indicating that "signed" is synonymous with "execute"); The Law Dictionary (2002 ed.) ("[A]n executed contract also means that signatures, attestation requirements[,] and appropriate filings have been fully completed, leaving no question as to the quality of the contract's formation.").
As Judge Bianco noted, this definition seems to fit squarely in line with "terms of art that have long been associated with real estate sales contracts." Chicago Five, supra, 24 N.J.Tax at 351 (citing several real estate websites that define "executed contract" as a contract that has been signed). Judge Bianco also pointed to several real estate resources that indicate that "[t]he phrase [']under contract['] generally refers to the time period from the signing *497 of the contract to the closing of the title (or termination), where the parties and subject property are bound by contract." Id. at 353 (emphasis removed).
The Legislature has provided no indication that the phrases "fully executed" or "under contract" should be given anything other than plain meaning and common usages definitions. Therefore, we adopt Judge Bianco's analysis and hold that the phrase "fully executed" within N.J.S.A. 46:15-7.4 is a contract that was signed and binding before July 1, 2006. The next step in our analysis is thus to determine whether the two contracts at issue were signed and binding before July 1, 2006.
The determinative issue is whether the subsequent "amendments" to the contracts were modifications or novations. New Jersey has long recognized the ability to modify one's contract. DeAngelis v. Rose, 320 N.J.Super. 263, 280, 727 A.2d 61 (App.Div.1999) (citing County of Morris v. Fauver, 153 N.J. 80, 95, 707 A.2d 958 (1998)); Gillette v. Cashion, 21 N.J.Super. 511, 516, 91 A.2d 421 (App.Div.1952). "[L]imited changes or amendments to a contract can be accomplished through modification." Fauver, supra, 153 N.J. at 100, 707 A.2d 958. A contract modification is "a change in one or more respects which introduces new elements into the details of a contract and cancels others but leaves the general purpose and effect undisturbed." Int'l Bus. Lists, Inc. v. Am. Tel. & Tel. Co., 147 F.3d 636, 641 (7th Cir.1998). A modification can be proved by "an explicit agreement to modify or by the actions and conduct of the parties as long as the intention to modify is mutual and clear." DeAngelis, supra, 320 N.J.Super. at 280, 727 A.2d 61.
Unlike a modification which leaves the original contract in place, a novation substitutes a new contract and extinguishes the old one. Fusco v. City of Union City, 261 N.J.Super. 332, 336, 618 A.2d 914 (App.Div.1993) (citing 15 Williston on Contracts, § 1865 at 582-85 (3d ed. 1972)). The elements of a novation are: (1) a previously valid contract; (2) an agreement to make a new contract; (3) a valid new contract; and (4) an intent to extinguish the old contract. T & N, plc v. Penn. Ins. Guar. Ass'n, 44 F.3d 174, 186 (3d Cir.1994); In re Timberline Property Dev., Inc., 115 B.R. 787, 790 (Bankr.D.N.J. 1990) (citations omitted).
The first, second, and third elements are established in both underlying cases. As Judge Bianco found:
The first element of novation is met under the present facts as . . . the [p]urchase [a]greement was a previously valid contract. The second element of novation has been met since the signing of the [a]mendment clearly demonstrates the parties' intent to be bound by its terms. The [third] element of novation has been satisfied as well since the validity of the [a]mendment has not been challenged. Furthermore, the [a]mendment is binding and contains all the components of a contract-offer, acceptance, and consideration.
[Chicago Five, supra, 24 N.J.Tax at 354-55 (emphasis removed).]
What is left to decide here is the fourth element, whether the parties "intend[ed] to extinguish the old contract." T & N, supra, 44 F.3d at 186.
When determining whether a novation occurred, "[t]he question is always one of intention." Morecraft v. Allen, 78 N.J.L. 729, 732, 75 A. 920 (E. & A.1910) (citation omitted). "In order to effect a novation there must be a clear and definite intention on the part of all concerned that such is the purpose of the agreement, for it is a well settled principle that novation is never to be presumed." *498 Sixteenth Ward Bldg. & Loan Ass'n v. Reliable Loan Mortgage & Sec. Co., 125 N.J.Eq. 340, 342-43, 5 A.2d 753 (E & A.1939). The burden of proving a novation lies with the party alleging it. Id. at 345, 5 A.2d 753.
Because intent is the primary inquiry, the issue of whether there was a novation is generally a question of fact to be presented to the jury and summary judgment should not be granted. Alexander v. Manza, 22 N.J.Misc. 88, 99, 36 A.2d 142 (Sup.Ct.1944). See also Fanucchi & Limi Farms v. United Agri Prods., 414 F.3d 1075, 1082 (9th Cir.2005) ("Determining the parties' intent is a highly fact-specific inquiry. . . . Such inquiries are not generally suitable for disposition on summary judgment.") (citation omitted). However, when the evidence is "one-sided" regarding whether the parties entered into a novation, summary judgment is appropriate. Tung v. Briant Park Homes, Inc., 287 N.J.Super. 232, 239, 670 A.2d 1092 (App.Div.1996).
Here, the amendments fail to provide a "clear and definite intention" by the parties to create a novation. Sixteenth Ward, supra, 125 N.J.Eq. at 342-43, 5 A.2d 753. Every amendment to the Wells Reit contract referred to the June 13, 2006 original purchase agreement and stated that the parties wish to "amend" the agreement. The definitions of terms not defined in the amendment "have the meanings ascribed to them in the [a]greement." Further, each amendment contains a ratification clause that states: "In all other respects, except as modified hereby, the [a]greement remains unmodified and in full force and effect." (emphasis added). None of this language suggests a "clear and definite intention" to effect a novation rather than a modification.
Similarly, the sole amendment to Chicago Five's contract states a "desire to amend" the original June 12, 2006 contract. The amendment also specifically provides that, "[e]xcept as modified herein, all terms and conditions of the [p]urchase [a]greement shall remain in full force and effect." (emphasis added). As such, none of the language suggests a "clear and definite intention" to effect a novation rather than a modification.
The Director argues that in both cases the change in purchase price renders the amendments novations rather than modifications. To support this argument, the Director relies on In re Timberline Property Development, Inc., supra, 115 B.R. 787, a 1990 decision by the U.S. Bankruptcy Court for the District of New Jersey. In Timberline, the court held that "a change in the purchase price is obviously a new term." Id. at 790. However, the Timberline court also found that two other amendments, one that required court approval of the contracts and another that changed the seller to a debtor-in-possession, combined with the price change, demonstrated a mutual "agreement" to make a new contract and extinguish the old one. Id. at 790 ("The buyers, no doubt, wanted the revised purchase price over the original, higher price, and the motion to approve the sale was brought before the court by the attorneys for the debtor. Thus, there appears to have been an agreement to make the new contract."). Here, there are no indications that the parties intended to make new agreements and cancel the old contracts. To the contrary, the language in the amendments indicate that the changes are modifications and that the original purchase agreements remain "in full force and effect." The Director provides no additional cases where a New Jersey court has held that a change in price automatically equates to a novation.
*499 In summary, in each case below the novation cannot be presumed, the evidence is one-sided, and there is no indication that the parties had the intention of extinguishing the original contract. We thus find the changes were modifications, not novations, and the original contracts remained in effect.

Whether N.J.S.A. 46:15-7.4 Creates An "Exemption" From The Mansion Tax?
"[W]hen interpretation of a taxing provision is in doubt, and there is no legislative history that dispels that doubt, the court should construe the statute in favor of the taxpayer." Fedders Fin. Corp. v. Dir., Div. of Tax'n, 96 N.J. 376, 386, 476 A.2d 741 (1984). However, where a taxpayer is seeking a tax exemption, "[t]hen the probable legislative intent is one of inclusion and exemptions are to be construed narrowly." Id. at 386, 476 A.2d 741. Thus, because the meaning of "fully executed" is not clear, whether N.J.S.A. 46:15-7.4 is an exemption is important in determining whether Wells Reit and Chicago Five are entitled to the Mansion Tax refunds.
Legislative intent may be derived "from an overall understanding of the words utilized and their relationship to other related provisions." Cooper Hosp. Univ. Med. Ctr. v. Prudential Ins. Co., 378 N.J.Super. 510, 514, 876 A.2d 335 (App.Div.2005) (citing State v. Afanador, 134 N.J. 162, 172, 631 A.2d 946 (1993)). "In other words, the meaning of the word or series of words may be ascertained by reference to a neighboring set of words or similar provisions in the same statutory scheme." Ibid. (citing State v. Mortimer, 135 N.J. 517, 536, 641 A.2d 257 (1994), cert. denied, 513 U.S. 970, 115 S.Ct. 440, 130 L.Ed.2d 351 (1994)). Inferences about a statute's meaning can also be drawn from the its "composition and structure." State v. Smith, 197 N.J. 325, 333, 963 A.2d 281 (2009).
An examination of the legislative history and the "neighboring set of words or similar provisions" reveals that N.J.S.A. 46:15-7.4 was not intended to be a tax exemption. Rather, as a matter of fairness, it is a provision that allows purchasers who already bargained for and signed their contracts before the law was enacted to receive a refund even though their deeds may have been filed after the law's effective date.
Little guidance on whether N.J.S.A. 46:15-7.4 is an exemption is found in the law itself, as the word "exemption" is not used. In contrast, N.J.S.A. 46:15-7.2(b)(2), which was also created by L. 2006, c. 33, does specifically provide for an exemption to the Mansion Tax:
The fee imposed by subsection a. of this section shall not apply to a deed if the transfer of real property is incidental to a corporate merger or acquisition and the equalized assessed value of the real property transferred is less than [twenty percent] of the total value of all assets exchanged in the merger or acquisition. A grantee shall claim this exemption from imposition of the fee at the time the deed is offered for recording by filing with the county recording officer such information, in addition to the affidavit of consideration filed by one or more of the grantee parties named in the deed or by the grantee's legal representative pursuant to subsection d. of this section, as the Director of the Division of Taxation in the Department of Treasury may prescribe as to constitute a filing of a protest of the assessment of the fee and by paying any other recording fees not exempted pursuant to this paragraph.

*500 [N.J.S.A. 46:15-7.2(b)(2) (emphasis added).]
See also N.J.S.A. 46:15-7.2(d)(2) ("Whether or not the transfer is exempt, pursuant to subsection b. of this section. . . .") (emphasis added).
We conclude that the Legislature intended to create exemptions in other portions of the bill, but made no exemption in N.J.S.A. 46:15-7.4. This conclusion is supported by the legislative history of the Mansion Tax. Guidance can be found in a prior amendment to the Mansion Tax, L. 2005, c. 19, which also contains a refund provision similar to N.J.S.A. 46:15-7.4. There, Assembly Bill A.3302 "add[ed] the exemption for transferees that are federally tax-exempt organizations" and "establish[ed]. . . the date on which the legislation shall take effect and incorporate[d] the provision for refund, which is structured explicitly to reflect that effective date." Senate Budget and Appropriation Committee Statement to A.3302 (December 6, 2004) (emphasis added). This language indicates that an exemption to the tax was made for charitable organizations, while a separate "provision" refunded fees as a matter of fairness to purchasers "who paid the fee . . . for a transaction occurring. . . before [the bill's effective date] and who would not be required to pay the fee under . . . [this bill] if the transaction had occurred on or after [the bill's effective date.]" L. 2005, c. 19, § 2; N.J.S.A. 46:15-7.3.
Similarly, L. 2006, c. 33 includes an exemption for certain transfers that are "incidental to a corporate merger or acquisition." N.J.S.A. 46:15-7.2(b)(2). It simultaneously contains a refund provision for contracts that were "fully executed" before the bill was signed into law. N.J.S.A. 46:15-7.4. This refund provision operates as a matter of fairness, ensuring that purchasers of commercial properties who had bargained for and fully executed their contracts prior to the law's enactment would not face an additional tax simply because the official deed transfers took place after the Legislature expanded the Mansion Tax to include commercial properties. Thus, so long as the contracts were "fully executed" before July 1, 2006 (days before L. 2006, c. 33 was enacted) and the deeds were transferred by November 15, 2006, purchasers were entitled to a refund of the Mansion Tax. N.J.S.A. 46:15-7.4.
The Legislature is presumed to know that establishing an "exemption" would result in the judiciary construing the statute in the State's favor, Johnson, supra, 192 N.J. at 276, 927 A.2d 1269, yet it chose not to call the refund provision an "exemption." Based on the fact that the Legislature articulated specific "exemptions" in both amendments of the Mansion Tax and twice opted to refer to the section of the bills allowing refunds as "provisions," we hold that N.J.S.A. 46:15-7.4 is a not a tax exemption. Therefore, we construe the statute in favor of the taxpayers. Fedders, supra, 96 N.J. at 384-86, 476 A.2d 741.
Accordingly, we hold that the plain meaning and common usage of the phrase "fully executed before July 1, 2006" in a real estate context means a contract that is signed and binding before July 1, 2006. Because all of the amendments to the Wells Reit and Chicago Five contracts repeatedly stated that they "modified" the original contracts and left the original contracts in "full force and effect," we find no "clear and definite intention" by the parties to effect novations. Sixteenth Ward, supra, 125 N.J.Eq. at 342-43, 5 A.2d 753. Therefore, the amendments were only contract modifications and both contracts were signed, binding, and "fully executed" before July 1, 2006.
*501 Reversed in Wells Reit, supra, 24 N.J.Tax 98, and affirmed in Chicago Five, supra, 24 N.J.Tax 342.
NOTES
[1] L. 2006, c. 33.