**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0611-24

EDWARD CARLSON,

     Plaintiff-Respondent,

v.

GARY WEBER and
ACCUPOINT SOLUTIONS,
LLC,

     Defendants-Appellants.

_____

Argued October 7, 2025 – Decided October 29, 2025

Before Judges Firko and Vinci.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-2754-22.

Erica Joy Goldring argued the cause for appellants (Law Offices of Damian Christian Shammas, LLC, attorneys; Damian Christian Shammas and Erica Joy Goldring, on the briefs).

Michael J. Connolly argued the cause for respondent (Davison Eastman Muñoz Paone, PA, attorneys; Michael J. Connolly, on the brief).

PER CURIAM

Defendants Gary Weber and AccuPoint Solutions, LLC (AccuPoint) appeal from an August 2, 2024 order denying their cross-motion for summary judgment seeking dismissal of a portion of plaintiff Edward Carlson's claims alleging breach of contract and for unpaid wages under the New Jersey Wage Payment Law (WPL), N.J.S.A. 34:11-4.1 to -4.14, based on the six-year statute of limitations (SOL) applicable to contractual claims, N.J.S.A. 2A:14-1. Defendants also appeal from a September 27, 2024 final judgment entered following a jury trial arguing the court incorrectly denied their motion for a directed verdict at the close of plaintiff's case. We affirm.

We summarize the facts in the record viewed in the light most favorable to plaintiff, the non-moving party. See Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). Weber is the founder and majority owner of AccuPoint, which collects and sells data to financial companies. On September 25, 2015, plaintiff was hired by Weber as an employee of AccuPoint. Weber orally agreed to pay plaintiff $12,000 per month.

On July 27, 2016, plaintiff and Weber executed a written employment agreement. The agreement provided:

[y]ou are eligible to receive compensation of $12,000 per month, equating to $144,000 per year, if annualized.

* Compensation will be paid at [Weber's] discretion, taking into account cash flow each month.

* While all efforts will be made to provide a portion if not all compensation in any given month; compensation in any one month is not guaranteed.

* Unpaid compensation will accrue month to month and be paid as the business can support such payment. Compensation has been accruing beginning September 29, 2015.

* Once AccuPoint . . . is established, monthly compensation may increase, but never total more than what has accrued.

* We will work together to determine a mutually agreeable and beneficial means to pay any compensation greater than $40,000 in any calendar year.

Plaintiff retired effective January 31, 2018. He contends AccuPoint was obligated to pay him $337,840 for the period October 1, 2015, through January 31, 2018, and $1,840 for time worked in September 2015, but only paid him $57,500. Defendants do not dispute plaintiff "was not paid for most of the services he provided to" AccuPoint, but "the parties disagreed on how much he was paid and how much he was owed."

A-0611-24

On October 7, 2022, plaintiff filed this action against defendants alleging, among other things, causes of action for breach of contract and for unpaid wages under the WPL. He sought payment of unpaid wages for the period September 25, 2015, through January 31, 2018. Following the close of discovery, plaintiff moved for partial summary judgment on his breach of contract and WPL claims. Defendants cross-moved for partial summary judgment arguing plaintiff's claim for lost wages earned prior to October 7, 2016 was barred by the six-year SOL applicable to contractual claims.

On August 2, 2024, after hearing oral argument, the motion judge entered an order granting plaintiff's motion, in part, and denying defendants' motion. The judge granted plaintiff's motion for summary judgment on his breach of contract claim because AccuPoint "acknowledge[d] [it] owe[s] him money." However, the motion judge found she did not "have evidence indicating that [defendants] did[ not] have money at any point in time to pay [plaintiff] whatever it is they think is due and owing . . . and that is why [the court found] in favor of plaintiff on liability on the breach of contract only."

The judge denied defendants' cross-motion based on the SOL, concluding:

> [She] absolutely [could not] find as a matter of law viewing all of the facts in the light most favorable to the . . . plaintiff . . . that [the] contract . . . says. . . he

does[ not] get paid until [defendants] decide that they have the money to pay him as a matter of law.

A jury trial was conducted on September 16, 17, and 18, 2024. In his opening statement, defense counsel told the jury that "in September 2015[,] [plaintiff] and [AccuPoint] agreed that [plaintiff] would become an employee of the company[,] and he would be paid a salary of [$]12,000 . . . per month." He conceded plaintiff "is owed money . . . [b]ut he is not owed the amount that he is seeking."

Plaintiff testified that while he was employed by AccuPoint, he received partial payments of $1,500 to $5,000 each toward his outstanding wages, in the total amount of $57,500. He was owed unpaid wages in the amount of $280,340.

Plaintiff asked on numerous occasions to be paid in full, but Weber always gave him "the same answer. He does[ not] have the money." Plaintiff testified Weber repeatedly promised orally and in writing that he would pay plaintiff in full, and plaintiff continued working for AccuPoint "under that promise."

Plaintiff believed Weber would "live up to his word" and pay him in full. In an email sent on November 3, 2017, Weber told plaintiff he "constantly think[s] about [his] accrual and how [he can] ensure getting [plaintiff] paid on this." Weber "remain[ed] confident (more now than ever) in the business and that [he would] get [plaintiff] all [his] accrued pay." On December 31, 2018,

5

Weber wrote to plaintiff that he "[w]ill be sure to get [him] money as soon as [plaintiff was in]. Just end of year processing delays." In an email on February 11, 2020, Weber confirmed he "said many times before that [he was] committed to paying [plaintiff] and that the timing must be right."

At the close of plaintiff's case, defendants moved for a directed verdict pursuant to Rule 4:37-2(b) and Rule 4:40-1 arguing plaintiff's claim for wages earned prior to October 7, 2016 was barred by the SOL. The trial judge denied the motion finding "there was clearly, based upon the evidence presented, a continuing promise to pay." "[D]efendant . . . has throughout this matter promised to make good on his word, make payments to . . . plaintiff."

Weber testified as the sole witness for the defense. Defendants did not renew their motion for judgment at the close of all the evidence pursuant to Rule 4:40-1. The jury found defendants violated the WPL and that plaintiff "suffered damages as a proximate result of . . . [AccuPoint's] . . . breach of contract." The jury awarded plaintiff $206,515 in damages. On September 27, 2024, the trial judge entered final judgment consistent with the jury's verdict. On January 24, 2025, the judge entered an order staying execution of the judgment pending appeal, subject to defendants depositing the full amount of the judgment into court. This appeal followed.

6

On appeal, defendants argue the court "erred in denying defendants' cross-motion for partial summary judgment and defendants' directed verdict motion on [SOL] grounds." Defendants contend the judges "failed to acknowledge, consider, and apply well-established law on equitable tolling." Specifically, they claim the judges applied the doctrine of equitable tolling in violation of the equitable tolling statute applicable to "actions at law grounded on any simple contract." N.J.S.A. 2A:14-24. We are not convinced.

We review an order granting or denying a motion for summary judgment motion or for a directed verdict de novo, applying the same standard as the trial court. Samolyk v. Berthe, 251 N.J. 73, 78 (2022); see also Frugis v. Bracigliano, 177 N.J. 250, 269 (2003). In assessing a summary judgment motion, a court must consider "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill, 142 N.J. at 540; see R. 4:46-2.

Similarly, when deciding a motion for a directed verdict, a court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Frugis, 177 N.J. at 269 (quoting Brill, 142 N.J. at 536 (internal

quotation marks omitted)). "To the extent that the trial court's decision constitutes a legal determination, we review it de novo." D'Agostino v. Maldonado, 216 N.J. 168, 182 (2013).

Both parties assert plaintiff's WPL claim is governed by the six-year SOL set forth in N.J.S.A. 2A:14-1, which provides, in relevant part: "[e]very action at law for trespass to real property, for any tortious injury to real or personal property, . . . or for recovery upon a contractual claim or liability, express or implied . . . shall be commenced within six years."

A claim for wages based on the WPL, however, does not fit neatly in any of the categories of claims delineated in N.J.S.A. 2A:14-1, nor does the WPL include an express limitations period for the filing of a private cause of action. We are nevertheless persuaded that a claim for wages arising under the WPL is comparable to a claim for breach of contract or a tort claim for economic harm such that it should be subject to the six-year limitations period provided by N.J.S.A. 2A:14-1. See Troise v. Extel Commc'ns, Inc., 345 N.J. Super. 231, 236-38 (App. Div. 2001) (finding statutory claim for wages under the Prevailing Wage Act, N.J.S.A. 34:11-56.25 to -56.46, is comparable to a claim for "breach of contract or other economic harm" such that it should be "subject to the six-

8

year limitations period provided by N.J.S.A. 2A:14-1 for breach of contract and tort claims for economic harm").

Even so, plaintiff's claim for unpaid wages pursuant to the WPL is a claim premised on a statutory right of action. It is not an "action[] at law grounded on [a] simple contract" and, for that reason, defendants' claim that the equitable tolling statute, N.J.S.A. 2A:14-24, applies is incorrect. Instead, traditional common law rules of equitable tolling apply. A statute of limitations may be equitably tolled: "(1) [if] the defendant has actively misled the plaintiff, (2) if the plaintiff has in some extraordinary way been prevented from asserting his [or her] rights, or (3) if the plaintiff has timely asserted his [or her] rights mistakenly in the wrong forum." Barron v. Gersten, 472 N.J. Super. 572, 577 (App. Div. 2022) (alterations in original) (quoting F.H.U v. A.C.U, 427 N.J. Super. 354, 379 (App. Div. 2012)) (internal quotation marks omitted).

Upon our de novo review, we are convinced the judges correctly denied defendants' motions for summary judgment and for a directed verdict on plaintiff's WPL claim. The evidence, viewed in the light most favorable to plaintiff, establishes Weber repeatedly promised to pay plaintiff all the wages he was owed and plaintiff continued working for AccuPoint based on those promises. In addition, defendants conceded plaintiff was not paid what he is

9

owed and that Weber always intended to pay plaintiff when he was able to do so. The judges properly denied defendants' motions on plaintiff's WPL claim based on the doctrine of equitable tolling.

We are also satisfied the judges correctly denied defendants' motions relating to plaintiff's breach of contract claim. Unlike the WPL claim, plaintiff's equitable tolling argument in connection with his breach of contract claim is subject to N.J.S.A. 2A:14-24. That statute provides:

> In actions at law grounded on any simple contract, no acknowledgment or promise by words only shall be deemed sufficient evidence of a new or continuing contract, so as to take any case out of the operation of [N.J.S.A. 2A:14-1], or to deprive any person of the benefit thereof, unless such acknowledgment or promise shall be made or continued by or in some writing to be signed by the party chargeable thereby.

"In addition to the requirement of a writing[,] it is also necessary that the acknowledgment relied upon be such as in its entirety fairly supports an implication of a promise to pay the debt immediately or on demand." Denville Amusement Co. v. Fogelson, 84 N.J. Super. 164, 170 (App. Div. 1964) (emphasis omitted) (citing Bassett v. Christensen, 127 N.J.L. 259, 261 (E. & A. 1941)).

Again, when viewed in the light most favorable to plaintiff, the evidence presented, including Weber's oral and written communications, was sufficient

10

to establish Weber created a "new or continuing contract" to pay plaintiff all the unpaid wages he was owed on demand. The judges properly denied defendants' motions relating to plaintiff's breach of contract claim based on the doctrine of equitable tolling.

Concepts of basic fairness and equity also support the denial of defendants' motions.

> While the [SOL] is one of repose, intended to protect honest debtors from the payment of stale claims[,] where the evidence to refute them may be supposed to be lost or destroyed, it is not to be used to defeat an admittedly honest claim where the debtor, knowing of its existence[,] admits the claim to be correct . . . and repeatedly promises in writing to make additional payments thereon.
>
> [Trenton Banking Co. v. Rittenhouse, 96 N.J.L. 450, 453 (E. & A. 1921).]

Here, there is nothing stale about plaintiff's breach of contract claim. No evidence has been lost. Moreover, defendants have consistently admitted the debt over the years and there is no sound reason why any portion of plaintiff's breach of contract claim should have been dismissed.

To the extent we have not specifically addressed any remaining arguments, it is because they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M. C. Harley*

Clerk of the Appellate Division